## In re STILLWELL et al.

## In re ASHBAUGH.

(Circuit Court of Appeals. Sixth Circuit. April 9, 1926.)

Nos. 4545, 4546.

1. **Bankruptcy** ⊂⟹446—On petition to revise orders of bankruptcy court, Circuit Court of Appeals cannot decide disputed fact questions, or do more than review questions of law.

On petition to revise orders of bankruptcy court, Circuit Court of Appeals cannot decide disputed questions of fact, or do more than review questions of law, considering in connection therewith whether there is evidence to support them.

2. **Bankruptcy** ⊂⟹368—Bankruptcy trustee, who made no report for two years, and whose report, when made, was insufficient to show true state of accounts, who misused bankrupt's funds, never placed others in designated depository, and made improvident expenditures, held not entitled to compensation.

Bankruptcy trustee, who did not report condition of estate to referee for over two years, whose report did not show true state of his accounts, and who misused some of bankrupt's funds, never placed others in designated depository, made frequent improvident expenditures and finally resigned and refunded to receiver money which he had wrongfully appropriated, held properly denied compensation.

3. **Bankruptcy** ⊂⟹223—Bankruptcy referee, who did not require trustee to report, never prepared dividend sheet or list of claims, kept no intelligible record, and permitted extravagant use of trust funds, held not entitled to compensation (General Order 26; Bankruptcy Act, § 29 [Comp. St. § 9613]).

In view of General Order 26, and Bankruptcy Act, § 29 (Comp. St. § 9613), referee in bankruptcy, who never required trustee to report status of estate, never prepared dividend sheet or list of claims, made no orders for payment of claims, kept no intelligible record of proceedings, permitted extravagant, if not wrongful, use of trust funds, and failed to require economical administration of estate under Bankruptcy Act, held not entitled to compensation.

4. **Bankruptcy** ⊂⟹228—Bankruptcy referee's allowance to trustee's attorneys may be revised or reduced by bankruptcy court on its own motion any time before settlement of trustee's accounts.

Bankruptcy referee's notation on his docket of allowance to trustee's attorneys was not equivalent to an order; but, if it was, bankruptcy court had right on its own motion, at any time before settlement of trustee's accounts, to revise order and reduce allowance.

5. **Bankruptcy** ⊂⟹446—On petition to revise order reducing allowance to trustee's attorneys, Circuit Court of Appeals will consider size of estate, extent of services and their results, and opinion evidence as to reasonableness of fee.

On petition to revise order of bankruptcy court reducing allowance to trustee's attorneys, Circuit Court of Appeals, in determining whether evidence is clearly against findings, will consider size of estate, extent of services and their results, and opinion evidence in respect to reasonableness of fee.

Petitions to Revise Order of the District Court of the United States for the Southern District of Ohio; Benson W. Hough, Judge.

Petitions of L. C. Stillwell and another and of Paul M. Ashbaugh, trustee in bankruptcy, to revise orders of the District Court reducing allowance to trustee's attorneys and disallowing other credits claimed by trustee. Affirmed.

In Case No. 4545:

Franklin Rubrecht, of Columbus, Ohio, for petitioners.

Samuel L. Black, of Columbus, Ohio, for respondents.

In Case No. 4546:

Franklin Rubrecht, of Columbus, Ohio, for petitioner.

Samuel L. Black and D. B. Ulrey, both of Columbus, Ohio, J. W. Barry, of Mt.

Gilead, Ohio, and Henry Gumble, of Columbus, Ohio, for respondent.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. In September of 1921 the Knox Tire & Rubber Company was adjudged a bankrupt and Paul M. Ashbaugh appointed trustee. The estate was a substantial one. Robert M. Greer, the referee in bankruptcy, was appointed special master, and L. C. Stillwell and F. O. Levering were employed as attorneys for the trustee. After more than two years, during which the estate was in process of administration, Greer was removed from office by the judge, and Ashbaugh resigned, after filing what purported to be a statement of his accounts, which was referred to Frederick N. Sinks, referee, to take proof on exceptions filed thereto by various stockholders and report to the court. Petitions to review certain findings of the referee, not necessary to set out here, were brought to the District Judge, who, among other rulings, entered an order on his own motion reducing the fee allowed Stillwell and Levering (Ashbaugh had paid them, with Greer's approval, $20,000) from $15,000 to $5,000. The case is here on petitions to revise the orders of the court reducing this fee and disallowing other credits claimed by the trustee, approximating $22,000.

[1] The record does not contain findings of fact touching the questions to be reviewed, unless the judgment on the exceptions, wherein the court's views of the facts are expressed, be so considered. We accept them as findings, but we are without authority to decide disputed questions of fact or to do more than review the questions of law, considering in connection therewith whether there is evidence to support them. In re Stewart (6 C. C. A.) 179 F. 222, 102 C. C. A. 348; Powder Co. v. Sternbergh, 218 U. S. 299, 31 S. Ct. 25, 54 L. Ed. 1047. Exceptions were sustained to specific credits claimed by Ashbaugh, excluding the attorney's fee, as follows: Commissions and fees of Robt. M. Greer, referee and special master, amounting to $5,933.25; compensation or fees of the trustee as such $10,329.62; payments to W. W. Stillwell for clerical services to trustee, to the extent of $3,842.25; fee of $2,000 paid to E. G. Lloyd as attorney and receiver for the Mt. Vernon Rubber Company.

[2] The argument of counsel for petitioners is devoted mainly to the reduction of the attorney's fee. We advert briefly to the matters just mentioned, which more directly affect the trustee. For more than two years he did not report to the referee the condition of the estate, and, when he did report, did it so imperfectly as to render impracticable an ascertainment of the true state of his accounts. He misused some of the funds of the bankrupt; others were never placed in the designated depository; his expenditures on behalf of the trust were frequently improvident; many of them were not counter-balanced by voucher or receipt; he finally resigned, and refunded more than $17,000 to the receiver which he had wrongfully appropriated. In view of these abuses of the trust, it was eminently proper to deny him compensation. In re Leverton (D. C.) 155 F. 931; In re Schoenfeld, 183 F. 219, 105 C. C. A. 481.

[3] The referee's conduct was equally reprehensible. He did not at any time require the trustee to report the status of the estate, never prepared a dividend sheet or list of claims, made no orders for the payment of claims, kept no intelligible record of the proceedings in the case, and permitted the extravagant if not wrongful use of the trust funds; in fact, failed in practically every essential particular to require an economical administration of the estate according to the Bankruptcy Act. His accounts were, of course, subject to the approval of the judge. G. O. 26. The statute makes extortion by the referee a criminal offense. B. A. § 29 (Comp. St. § 9613). The court found, on ample evidence, that he had been guilty of "misconduct, misfeasance and malfeasance as such referee and special master in this cause." His services were almost, if not quite, negligible—certainly they were hurtful rather than beneficial to the estate. He did not know what part of the amount withdrawn by him as compensation was for his services as special master, or what for his services as referee, though he estimated that a fourth of it was for services in the latter capacity. The withdrawals were wholly unauthorized, as nothing was due him in commissions or as special master when they were made. On these facts the court was clearly right in rejecting his claim for compensation.

There was also, we think, evidence warranting the reduction of W. W. Stillwell's compensation from $4,842.25 to $1,000. The services performed by this young man resulted in little, if any, substantial benefit to the estate; and we fail to see how he could have devoted any considerable amount of la-

bor or time to the work that he was employed to perform. As to the fee paid to E. G. Lloyd, it is enough to say that it was not for services rendered in behalf of or properly chargeable against the estate.

[4] Stillwell and Levering assail the reduction of their fee on three grounds, the first two of which assume that the referee, Greer, regularly entered an order on his docket allowing a fee of $10,000 to each of these petitioners. Upon this hypothesis it is contended that, as no objection was made or exception taken to the allowance, and no petition to review it filed, it was not thereafter subject to revision by the court on its own motion. The notation of the allowance made by the referee was not, we think, the equivalent of an order; but, if it was, the court had the right, on its own motion, at any time before the final settlement of the trustee's accounts, to revise the order and reduce the allowance, for, as said in Re De Ran, 260 F. 739, 171 C. C. A. 477, "while the claim was not that of a creditor, and so not subject to the statute, it was, nevertheless, being an administrative order, subject at any time before the closing of the estate to reexamination and to such disposition as the equities of the case require." This case, with the authorities therein cited, disposes of the contention.

[5] We come, then, to the contention that the court wholly disregarded the testimony as to the value of the services of counsel for the trustee. The utmost that we can do in considering this point is to ascertain whether the evidence is indisputably against the finding. From that standpoint there are to be considered the size of the estate, the extent of the services with their accompanying results, as well as the opinion evidence in respect to the reasonableness of the fee. The latter evidence was based on a hypothetical question purporting to state somewhat in detail all the facts that were thought to be pertinent to a correct appraisement of the services. It should be remembered, however, that the trial judge had before him, not only this testimony, but the facts otherwise appearing in the record, showing what services had been rendered. He was in position to judge of the accuracy of the statements in the hypothetical question, and to appraise fairly the value of the services, independently of the opinions expressed by those who had testified on that subject. We cannot say his conclusion is without supporting evidence.

The orders of the District Court are affirmed.