**In the Matter of Theodore T. LOWE, Jr., Attorney.**

United States Bankruptcy Court, N. D. Georgia.

Dec. 4, 1981.

See also, 18 B.R. 26.

---

## DISCIPLINE, SUSPENSION, REMOVAL FROM PRACTICE AND/OR CONTEMPT OF COURT

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

### ORDER

Pursuant to hearings held by this court on October 26, 1981, involving the conduct of Theodore T. Lowe, Jr. in his representation of debtors in cases filed in this court, the court makes the following findings:

First. Theodore T. Lowe regularly files Chapter 7 and Chapter 13 petitions in this United States Bankruptcy Court and represents debtors in such cases and various proceedings within those cases.

Second. The misconduct of this attorney has been noted in several instances by the Bankruptcy Judges of this court and at least ten hearings, before three different Bankruptcy Judges, have been held in respect to such misconduct. Actions of contempt resulting in sanctions have been imposed by the Judges, including a reference

of this attorney's misconduct to the U.S. District Court. Recommendation of a Bankruptcy Judge dated August 26, 1981 and September 4, 1981, to the Honorable Charles A. Moye, Jr., Chief Judge, United States District Court, Northern District of Georgia.

Third. The undersigned has on several occasions reprimanded Theodore T. Lowe, Jr. for his failure to appear and represent his debtor clients at meetings of creditors hearings required by Section 341 of the Bankruptcy Code. Orders of contempt and sanction additionally have been entered for those failures to appear. These failures invariably require repeated appearances by the creditors, representatives and staff of this court, or the Judge at rescheduled hearings, all to the burden and inconvenience of the parties and this court. (Copies of some of such orders are included within Appendix I) Regularly at such hearings, Mr. Lowe has promised to comply with the orders and rules and policy of the Bankruptcy Code and this Bankruptcy Court. The order of the undersigned in case No. 81–00071A re Barbara A. Arnold dated November 10, 1981, noted these promises and did not impose sanctions for the contempt found there, but specifically warned Mr. Lowe that future actions of this nature would result in his suspension from practice before this court rather than orders of contempt or reduction of fees.

Fourth. The transcript of a hearing before the undersigned on October 26, 1978, in the Chapter 13 case of Josephine Grant, Debtor, Case No. 81–02804A, demonstrates that Mr. Lowe frequently (five occasions, Tr. 5, 6, 7, 9 and 21) fails to appear at hearings, but sometimes requests a partner, Mr. LeRoy Baldwin, or a business associate, a layman, Mr. Gene Martin, to inform the court that Mr. Lowe is busy with other matters and cannot attend the Bankruptcy Court that day. Mr. Baldwin testified that Mr. Lowe's statement to the court regarding those occasions was incorrect because Mr. Lowe did not ask Mr. Baldwin to represent him on those occasions or inform the court of anything (Tr. 7, 8). Mr. Lowe then

stated that Mr. Martin sometimes came to court to inform the court of the inability of Mr. Lowe to appear as ordered. (Tr. 9, 11, 12, 20, 21).

Mr. Lowe testified that he files Chapter 13 cases in this court for and with Mr. Gene Martin, a non-lawyer, for debtors; that sometimes Mr. Martin fills out the Chapter 13 papers and sometimes Mr. Lowe fills out the papers from information furnished by Mr. Gene Martin (Tr. 15); that sometimes Mr. Martin files the Chapter 13 petition in the Bankruptcy Court (Tr. 21, 25); that sometimes law clerks or others file such papers in court (Tr. 26); that the debtors pay Mr. Gene Martin a fee and Mr. Martin sometimes pays part of that payment to Mr. Lowe (Tr. 14, 16, 17); that Mr. Lowe considers that Mr. Martin is the client of Mr. Lowe (Tr. 14); that Mr. Lowe considers that the debtor is Mr. Martin's client (Tr. 14, 16, 22); that sometimes Mr. Lowe and Mr. Martin meet together with the debtor (Tr. 15); that Mr. Lowe advises the debtors "of their rights" (Tr. 15); that sometimes Mr. Martin (Tr. 22, 25, 27) or someone (Tr. 23, 24, 26, 29, 30, 33) signs the name of Mr. Lowe to (1) the debtor's petition, (2) schedules and (3) motions to file the fee in installments which are filed by someone other than Mr. Lowe; that Mr. Lowe then appears in such cases to represent the debtor in hearings in the Bankruptcy Court (Tr. 25, 30–31).

Fifth. The transcript of the hearing before this court on October 26, 1981, and the record of notices and orders in the Chapter 13 case of Hazel Matthews, Debtor, Case No. 81–02806A, indicate that an attorney other than Mr. Lowe filed a Chapter 7 case for Ms. Matthews in which a discharge was granted by the Bankruptcy Judge. The case was closed on December 23, 1980 (par. 3–5 of Judge Norton's Statement of Facts of August 31, 1981). Then, on January 5, 1981, a Chapter 13 case was filed by Mr. Lowe for Ms. Matthews to prevent a scheduled foreclosure sale on the debtor's residence by Federal National Mortgage Association. (Tr. 3–4). At a Chapter 13 confirmation hearing, Ms. Matthews testified that she had made three recent mortgage payments and the case was continued. The facts later developed, however, that the debtor's check to FNMA was worthless; it was written on a checking account which had been closed for six months (Tr. 4–5). The plan filed for this debtor by Mr. Lowe was denied and the Bankruptcy Judge dismissed the case. The stay was lifted and the creditor was allowed to foreclose.

FNMA began advertisements on the premises (Tr. 5). Mr. Lowe filed a second Chapter 13 petition for Ms. Matthews on July 6, 1981, just before foreclosure day, thus again initiating the automatic stay of 11 U.S.C. § 362 (Tr. 5). This time the case came before the undersigned. (Case No. 81–02806A) Mr. Lowe testified at the hearing on October 26, 1981, before the undersigned that the signature on Ms. Matthews' petition was not his (Tr. 6); that he did not know who signed his name (1) to the voluntary petition, (2) to the Application to Pay Filing Fee in Installments, (3) to the proof of claim of Mr. Lowe for $300.00 (Tr. 8–9) and (4) to the certificate of disclosure of attorney fees paid. Yet Mr. Lowe testified that he considered Ms. Matthews his client as of the filing of the case. Mr. Lowe filed an objection to the dismissal of the second Chapter 13 case, and he appeared at the hearing on September 23, 1981, and on October 26, 1981, as her attorney (Tr. 6); and, Mr. Lowe testified that he had only talked with Ms. Matthews "on two occasions in person and this morning by telephone" (Tr. 7); that Mr. Gene Martin, not Mr. Lowe, called the office of the attorney for FNMA on the day of the second scheduled foreclosure to inform that the second Chapter 13 case had been filed (Tr. 7).

The undersigned entered a five page, 23 paragraph Statement of Facts, plus an order of dismissal of the second Chapter 13 case (dated August 31 and filed on September 2, 1981). The order of the undersigned also ordered Mr. Lowe to reimburse FNMA for attorney fees expended in defense of the frivolous filing of the second Chapter 13 petition by the payment of $300.00 to Mr. William A. Broughman, attorney for FNMA in each of Ms. Matthews' Chapter 13

cases. Mr. Lowe failed to pay the $300.00 as ordered. FNMA presented a motion on October 6, 1981 and the court entered an order to show cause to Mr. Lowe. On October 26, 1981, the court held a hearing on the motion of FNMA for Mr. Lowe to show cause why the order of August 31, 1981 has not been complied with (Tr. 3) to pay the required $300.00 to attorney for FNMA (Motion and Show Cause Order presented October 6, filed October 7, 1981). The undersigned ordered a transcript of the hearing and took the matter under advisement. On November 5, 1981, FNMA filed another motion for Mr. Lowe to show cause why the said order has not been complied with (Motion and Order November 5, 10). The hearing on this motion, scheduled for December 8, 1981, is hereby cancelled.

## CONCLUSIONS

Lectures, protestations and admonitions to Mr. Lowe by this court concerning his performance as an attorney in cases and proceedings in this court and his non-compliance with orders of the Court have produced only promises of reformed behavior. He has continued to violate the rules and orders governing cases and proceedings in this court.

The record before this court clearly demonstrates that Mr. Lowe is a burden on this court and a menace to litigants herein and to the debtors he purports to represent. His relationship with Mr. Gene Martin, a layman, is contrary to the ethical behavior demanded of attorneys admitted to practice in this court. Mr. Lowe does not admit and perhaps does not recognize any ethical problem with this relationship with Mr. Martin (Grant Tr. 12–14) which abuses and prostitutes the law and the rules governing this court. Mr. Lowe considers Mr. Martin to be his client and the Chapter 13 debtors to be the clients of Mr. Martin (Grant Tr. 12–14). Without disclosure required by 11 U.S.C. §§ 330, 331, 503, 504 and Bankruptcy Rule 219 of the sharing of fees with a non-lawyer, he shares payments received from debt-

ors with Mr. Gene Martin. Mr. Martin signs the name of Mr. Lowe as attorney on the Chapter 13 petitions and other documents and files the papers in this court, and Mr. Lowe appears in this court to represent the debtors.

Mr. Lowe possibly recognizes his manifold deficiencies as an attorney in this court in that he has stated to the court that he "will accept no more Chapter 13's" in this court. (Grant Tr. 35). But, Mr. Lowe's lack of understanding of the Canons of Ethics and Professional Responsibility for attorneys is appalling. His lack of knowledge or application of the law, rules and procedures applicable to bankruptcy cases and proceedings involving his clients and this court is equally appalling.

As a result of the incompetence of this attorney in representing clients in this court and his repeated contempts of the provisions of the Bankruptcy Code, Bankruptcy Rules, local rules and specific orders of this court, and most specifically his disregard of the order requiring payment of $300.00 to a litigant in this court, the court is compelled to take action to discipline this attorney. The court concludes that reduction or forfeiture of attorney fees or other monetary sanctions are insufficient discipline to secure Mr. Lowe's compliance with the law, orders and rules of this court.

Moreover, the public and this court must be protected and insulated from the actions of Mr. Lowe. This attorney must be enjoined from further inflicting such actions upon his clients and this court.

## JUDICIAL POWERS

The attorney for FNMA argues that this Bankruptcy Court has the judicial power to assess as sanction for civil contempt the amount of damages flowing from the improper acts of attorneys for debtors. The damages herein inflicted upon FNMA were not caused by the debtor but by the improper actions of her attorney, Mr. Lowe. These costs should be born by the offending

# 24

attorney as a sanction for Mr. Lowe's contempt rather than by the debtor.[1]

■ The point has been made that this court lacks the authority to assess more than $250.00 as a civil contempt sanction as limited by Bankruptcy Rule 920(a)(3). The $250.00 limitation of this rule in that regard is inconsistent with the Bankruptcy Reform Act (11 U.S.C. § 105(a) and 28 U.S.C. § 1481) and such limitation on civil contempts is not applicable under the Bankruptcy Code.[2]

■ The power of the Bankruptcy Judge to issue sanctions for contempt of an attorney is not limited to monetary punishment; it includes the power to discipline an attorney for such conduct in cases and proceedings in this court.

The referenced actions of Theodore T. Lowe, Jr., occurred in cases filed by him in the United States Bankruptcy Court for the Northern District of Georgia. The cases filed were by voluntary petitions under 11 U.S.C. § 301. The Bankruptcy Court has exclusive jurisdiction over these cases, the debtors, the debtors' property, and the attorney who represents the debtors. 11 U.S.C. § 301, 28 U.S.C. § 1471(c), (d).

The Bankruptcy Court is a "court of record" 11 U.S.C. § 151(a), and a "court of the United States" 28 U.S.C. § 451, Reform Act, Title II, § 213. Each Bankruptcy Judge is a "judge of the United States" 28 U.S.C. § 451, Reform Act, Title II, § 213.

The United States Bankruptcy Court, created by the Bankruptcy Reform Act of 1978, 28 U.S.C. § 151, comes into existence on April 1, 1984, with the jurisdiction conferred by 28 U.S.C. § 1471. It is a new court, different in status and authority from the "court of bankruptcy" which functioned under the prior Act. The new court is separate and independent from the U.S. District Court, in contrast to the subsidiary function and status of the "court of bankruptcy" and Bankruptcy Judges as it existed and operated under Section 2a of the Bankruptcy Act. 124 Congr. Record H 11,-089, Sept. 28, 1978; 124 Congr. Record S 17,423 and 17,424, Oct. 6, 1978; *Norton Bankruptcy Law & Practice*, Part 4, §§ 4.13–4.17; 1979 *Annual Survey of Bankruptcy Law* 50, 69.

Under the Bankruptcy Act, petitions were filed in the District Court and the case referred to the Bankruptcy Judges. Filing fees were collected, deposited, maintained and the case was administered by the personnel of the District Court. The District Judges, therefore, had some considerable responsibility for such cases and the administration and function of the "court of bankruptcy." The Bankruptcy Reform Act of 1978 has changed that relationship and connection with the District Court and put all of such jurisdiction, power, authority and responsibility under the Bankruptcy Judges in the new U.S. Bankruptcy Court. 11 U.S.C. § 105; 28 U.S.C. § 151; 28 U.S.C. § 1471.

The single reference in 28 U.S.C. § 151 to "adjunct" has no meaning except as related to the passage and conferrence of jurisdiction under 28 U.S.C. § 1471. There is no functional or operational connection between the Bankruptcy Court and the District Court under the Reform Act and the Bankruptcy Code which became effective October 1, 1979. There is no nexus at all

---

**1.** *In the Matter of Preferred Surfacing, Inc.*, 3 B.C.D. 94, 96 (Bkrtcy.N.D.Ga.1976). There the court stated:

"An award of compensatory damages, costs, and attorney fees is not punitive in nature, but rather is designed to indemnify and make the Debtor whole for losses suffered by reason of the wrongful acts of the contemnor. Indeed, the very purpose of a civil contempt proceeding, unlike its criminal counterpart, is to coerce compliance with an order of the court and to compensate a party litigant for injuries occasioned by the contemnor's non-compliance. *See, e.g., Southern Railway Company v. Lanham*, 403 F.2d 119 (5th Cir. 1968); *Rivers v. Miller*, 112 F.2d 439 (5th Cir. 1940); *In re American Associated Systems, Inc.*, 373 F.Supp. 977 (E.D.Ky.1974); *U.S. v. J.B. Williams Co., Inc.*, 354 F.Supp. 521 (D.N.Y.1973); *modified on other grounds*, 498 F.2d 414 (6th Cir. 1974).

**2.** Reform Act, Title IV Transition, § 4.05(d). *In re Jeffrey Lee Brooks, Jr.*, 12 B.R. 283, 8 B.C.D. 95 (Bkrtcy.W.D.Mo.1981). Norton Bankr.L. & Prac., Part 4, § 4.31 and Part 20, § 20.36.

between the new Bankruptcy Court and the District Court, except that where the parties have not agreed to appeal direct to the Court of Appeals and where the Circuit Judicial Council has not adopted the optional Appellate Panel system of intermediate appeals, the appeals of final orders of the Bankruptcy Court shall go to the District Court.[3]

In the meantime, during the Transition Period from October 1, 1979 to March 30, 1984, the "court of bankruptcy," created by Section 2a of the Bankruptcy Act of 1898, is continued as a "separate department" of the U.S. District Court. Reform Act, Title IV, Transition § 404(a). The Bankruptcy Judges in office on October 1, 1979 and to April 1, 1984, during that Transition Period, are vested with all of the jurisdiction, judicial powers and authority which are conferred on the United States Bankruptcy Court and United States Bankruptcy Judges on April 1, 1984. Reform Act, Title IV, § 405(a), (b).

This jurisdiction is pervasive over cases and proceedings in the Bankruptcy Court. The United States Bankruptcy Court is granted the exclusive power to "exercise all of the jurisdiction conferred by" the Bankruptcy Code. 28 U.S.C. § 1471(c). This includes jurisdiction over "all civil proceedings arising under Title 11 or arising in or related to cases under Title 11," 28 U.S.C. § 1471(b) and, therefore, would include an action applicable to the discipline of an attorney practicing in a case under Title 11 in the Bankruptcy Court.

The judicial powers conferred are quite broad and extensive. The Bankruptcy Court is vested with the judicial powers of a court of "equity, law and admiralty," 28 U.S.C. § 1481, and specific broad power under 11 U.S.C. § 105 to enjoin and to issue all decrees and orders, process, and judgment "necessary and appropriate to imple-

ment the provisions of" the Bankruptcy Code and to govern the conduct of proceedings within the Title 11 U.S.C. cases. 11 U.S.C. § 105. This includes the power to enforce orders and the civil contempt power, derived from 11 U.S.C. § 105 and as limited by 28 U.S.C. § 1481. Section 105 of Title 11 U.S.C. incorporates the All Writs Statute, 28 U.S.C. § 1651, and "any other power traditionally exercised by a bankruptcy court." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 316–17 (1977), S.Rep.No.95–989, 95th Cong., 2d Sess. 29 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

Thus, the specific broad jurisdiction, judicial powers and inherent authority of a court of record, law, equity and admiralty, and of a court of the United States confer upon Bankruptcy Judges ample authority to regulate and control the conduct of persons practicing in the Bankruptcy Court. This is true during the period from October 1, 1979, the effective date of the Bankruptcy Code, as well as on and after April 1, 1984. This authority includes the power to adopt local rules of practice and procedure and to govern the admission and continuance of practice of attorneys in the Bankruptcy Court and "to impose appropriate sanctions for failure to comply." *Link v. Wabash R.R. Co.*, 291 F.2d 542, 545 (7th Cir. 1961). S.658, 96th Cong. 2d Sess. (1980), proposed amendment to Sec. 404(i) of Reform Act of 1978.

The United States Bankruptcy Court has the power, authority and responsibility to govern, control and discipline the conduct of attorneys practicing in Title 11 cases in this court. In the Northern District of Georgia, by order of all the Bankruptcy Judges of this Bankruptcy Court of this district, effective October 1, 1979, the roll of attorneys allowed to practice before this court is the roll of attorneys maintained by the United States District Court of the Northern District of Georgia.[4]

---

3. For further discussion of the term "adjunct" as used in 28 U.S.C. 151, See Norton Bankr.L. & Prac., Part 4, § 4.18.

4. Upon the effective date of the Bankruptcy Code and the commencement of filing of Title 11 cases in the U.S. Bankruptcy Court, on Oc-

tober 1, 1979, the United States Bankruptcy Court of the Northern District of Georgia, by an order of that date, adopted the local rules of

■ This Bankruptcy Court has the inherent and statutory power and authority to suspend or remove any attorney from the roll of attorneys allowed to practice in this court; and any such action of this Bankruptcy Court shall not affect the right of that attorney to continue to practice in the United States District Court, other federal courts, or the courts of the State of Georgia. Of course, such other courts may review and use the findings and orders of this court with respect to Mr. Lowe and take such action with respect to his admission to practice in such courts as those courts may deem appropriate.

The relevant procedure adopted by this Bankruptcy Court for admission to practice and discipline of attorneys is the procedure outlined in Local Rule 71.51 of the United States District Court for the Northern District of Georgia which was adopted by this court as a part of the local rules of this court by order entered by the Bankruptcy Judges of this district on October 1, 1979. These rules shall be applied by this court as to Mr. Lowe in respect to the action of the undersigned as to any discipline of Mr. Lowe as an attorney of this United States Bankruptcy Court.

IT IS ORDERED:

Wherefore, Theodore T. Lowe, Jr. is directed to appear before this Bankruptcy Court on 11th day of January, 1982, at 2:30 P.M., Room 530, United States Court of Appeals Courthouse, 56 Forsyth Street, NW, Atlanta, Georgia, and show cause, consistent with Local Rule 71.51 above cited, why he should not be suspended or removed from the rolls of attorneys authorized to practice in this United States Bankruptcy Court.

■ In the meantime, Theodore T. Lowe, Jr. is suspended from practice as an attorney in this court and is enjoined from filing any petitions in this court under his name, accompanying debtors to file petitions for debtors pro se in this court, appearing in this court, including the lobby, hall and courtroom in the company of debtors or other clients, advising debtors reference petitions and cases for filing pro se in this court, conspiring or cooperating with one Gene Martin or others in the soliciting of debtors to file bankruptcy petitions or consult or advise debtors concerning Title 11 cases, or appearing for or representing clients in any manner whatsoever in this court.

the United States District Court for this District, except as may be inconsistent with the procedures applicable to the Bankruptcy Court. This included the admission to the Bankruptcy Court of the roll of attorneys admitted to practice in the District Court and the attorneys admitted thereafter to practice in the District Court and the relevant procedure for control and discipline of attorneys practicing in the Bankruptcy Court.