In re Quentin M. DERRYBERRY, II.

In re PIGS ARE BEAUTIFUL,
INC., Debtor.

In re James Ross HARTLEY and Sharon Lee Hartley, etc., Debtors.

(And order in 50 other cases removing Quentin M. Derryberry, II as trustee and appointing successor trustees in Chapter 7 cases).

(And order appointing successor trustee in 85 Chapter 13 cases).

Bankruptcy Nos. 81–02210, 81–01855.

United States Bankruptcy Court,
N.D. Ohio, W.D.

April 24, 1987.

Kenneth Sullivan, Chicago, Ill., for Derryberry.

Howard B. Hershman, Toledo, Ohio, for BancOhio.

## OPINION AND ORDER REMOVING TRUSTEE, DISALLOWING COMPENSATION, RETURNING FUNDS AND REMOVING NAME FROM ROLL OF ATTORNEYS

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on for hearing on April 3, 1987 upon the motion of creditor Banc-Ohio National Bank for an order directing that Quentin M. Derryberry, II, (Derryberry) trustee of the estate of Pigs are Beautiful, Inc. (PAB) comply with the order of the court dated January 8, 1987, to pay the 7.8350% dividend declared to unsecured creditors. This matter also came on to be heard upon the court's own motion for Derryberry to show cause why he should not be removed from office as trustee, why the order allowing his compensation in the amount of $7,710.15 vacated and he be ordered to return said fees and the remaining undistributed funds of the estate of PAB to a successor trustee and why his name should not be removed from the roll of attorneys admitted to practice before this court on the following grounds:

1. That as a result of his representations that the estate of PAB was ready for distribution, an order upon trustee to distribute dividends was entered January 8, 1987. Derryberry has failed to comply with that order.

2. That as a result of his resignation from 85 chapter 13 cases, an order was entered October 10, 1986, whereby Derryberry was to file a final report in each case and turnover books, records and property of the estate to a successor trustee immediately upon his qualification. Derryberry failed to comply with that order.

3. That pursuant to Guideline Number 1 of the Chapter 13 Guidelines promulgated by the Judicial Conference, Derryberry was to submit his 1986 annual audit by January, 1987. Derryberry has failed to comply with that guideline.

4. That pursuant to Guideline Number 2 of the Chapter 13 Guidelines promulgated by the Judicial Conference, Derryberry was to submit his 1986 annual report by December, 1986. Derryberry has failed to timely comply with that guideline.

5. That as a result of Derryberry's removal as trustee from some 50 cases, he was to turnover all estate funds, property, books and records to successor trustees immediately upon their qualification. Derryberry failed to comply with that order.

6. That Derryberry has violated DR 1–102(a)(3), DR 1–102(A)(4), DR 6–101(A)(3), DR 7–102(A)(5) and DR 7–102(A)(8).

Upon consideration of the evidence adduced at the hearing, the court finds that Derryberry should be removed from office as trustee, his compensation for fees in the amount of $7,710.15 returned to the estate, a successor trustee appointed and that his name be removed from the roll of attorneys admitted to practice before this court.

## FACTS

Debtor Pigs are Beautiful, Inc.'s initial voluntary petition in bankruptcy was filed under Chapter 11 of Title 11 on October 22, 1981. As a result of Debtor's conversion from a chapter 11 case to a chapter 7 case, Derryberry was appointed trustee of Debtor's estate on December 10, 1982. On December 29, 1982, Derryberry made application for authority to conduct the business of Pigs are Beautiful, Inc. until it could be sold, which application was granted by the court on January 7, 1983. See Court's Exhibits 1 and 2, In Re Pigs are Beautiful, Inc. (Case No. 81–02210) (hereinafter Court's Exhibit). Derryberry employed three individuals to run this business until it was sold on or about October 3, 1983. Derryberry filed his report of sale on December 2, 1983. See Court's Exhibit 6. Derryberry filed a first closing report on January 18, 1985. See Court's Exhibit 22.

On August 8, 1986, creditor BancOhio National Bank filed a motion for order discharging trustee and appointing replacement trustee for the reason that "the trustee's response to the court's order to show cause why the case should not be closed does not disclose any significant reason for the delay in distribution." See Court's Exhibit 7. This motion was later dismissed by BancOhio as a result of Derryberry's representation that "all matters necessary to be done by the trustee for the closing of the above captioned case had been done" and that, therefore, BancOhio's motion was moot. See Court's Exhibit 10. On August 19, 1986, Derryberry filed a second closing report showing additional receipts and disbursements. See Court's Exhibit 23. He also filed a certification of claims review on

that date, indicating that all issues had been resolved and the case could proceed to distribution. See Court's Exhibit 8. On December 4, 1986, he filed a third "amended" closing report which again reflected additional receipts and disbursements. See Court's Exhibit 9. This final "amended" closing report indicated receipts in the amount of $719,771.54 and disbursements in the amount of $630,925.22 and a balance on hand in the amount of $88,846.32 for distribution. On that same date, Derryberry filed a memorandum indicating that because deductible expenses exceeded income, no tax would be due by the estate. See Court's Exhibit 9. A hearing on the final account was held on January 6, 1987, and finding of allowances and order upon trustee to distribute funds was entered by the court on January 8, 1987. See Court's Exhibits 11 and 14. To date, only Derryberry and his attorney have received monies. Derryberry failed to comply with the order to distribute the remaining funds to creditors.

## DISCUSSION

*PAB—January 8, 1987 Order to Distribute*

The initial issue before the court concerns Derryberry's failure to distribute the funds in accordance with this court's January 8, 1987 order. Derryberry testified that the reason he did not distribute the funds pursuant to the court's order was that there exists tax problems. See Defendant's Exhibit M, In Re Pigs are Beautiful, Inc. (Case No. 81–02210) (hereinafter Defendant's Exhibit). One tax issue concerns the amount of interest and penalties to which the Internal Revenue Service may be entitled on their proofs of claim filed with the court. The other issue concerns the withholding of FICA and federal income tax on wages paid to the three individuals employed while Derryberry operated the business.

The first issue concerns interest and penalties due IRS. 11 U.S.C. § 502 indicates that a properly filed proof of claim is deemed allowed unless an objection is made thereto. Derryberry filed his certification

of claims review on August 19, 1986, indicating that he had examined all proofs of claim and that said claims should be allowed as filed. See Court's Exhibit 8. These properly filed claims are, then, paid the face amount of the claims. The January 8, 1987 order upon trustee to distribute funds proposed payment of the IRS claims in full. See Court's Exhibit 14. Derryberry testified that he believed the U.S. Bankruptcy Court Clerk's office was responsible for contacting IRS Special Procedure Section and obtaining an amount representing interest and penalties on their claims to date. Such a belief is not founded as such an obligation is not imposed on the clerk's office. This belief is also unfounded in view of Derryberry's testimony which indicated that his experience included service as a bankruptcy trustee for 17 years and administrating hundreds of bankruptcy cases and distributing funds in accordance with hundreds of orders. He also testified that he had never questioned an order to pay dividends or requested an amended order of distribution. Undoubtedly, IRS claims requesting interest and penalties have been filed in cases assigned to Derryberry in the past.

Additionally, Derryberry testified that he did not make distribution in accordance with the January 8, 1987 order as upon his review of that order it was obvious that no interest and penalties had been calculated on IRS' claims. The problem with this testimony is that the order was mailed from the clerk's office after its entry on January 8, 1987. See Court's Exhibit 14. At the earliest, Derryberry would have received his copy at his business office in Wapakoneta, Ohio, January 9 or January 10, 1987. He testified that he could not recall the date he received the order. Derryberry further testified that he came to Toledo on January 12, 1987 for the start of his criminal trial. See infra, at 883. He stated that he contacted the clerk's office early on in his trial, presumably before January 15th, the date he was required to file his final account evidencing that distribution was made in compliance with the order. While Derryberry would have the court believe he contacted the clerk's office upon receipt of the January 8, 1987 order,

it seems unlikely that he would have received and reviewed that order prior to January 12, 1987.

The estate administrator testified that the tax issues first came to his attention in the middle of February. At that time, one of the deputy clerk brought him the bank statement and cancelled checks for the estate of PAB which reflected that distribution had only been made to Derryberry and his attorney. See Court's Exhibits 12 and 13. The estate administrator subsequently contacted Derryberry regarding his failure to make distribution to creditors in accordance with the January 8, 1987 order. Derryberry indicated in that conversation that there was an IRS tax issue and that he had, therefore, concluded that it would be inappropriate to make distribution at this time. The estate administrator testified that Derryberry did not contact him orally or in writing prior to his making this call.

The second tax issue concerns withholdings of payroll monies. As previously stated, Derryberry operated the business for some ten months pending sale of that business. In this capacity, he paid three individuals. Derryberry maintains that these individuals were independent contractors to whom he paid a gross salary. However, W–2's issued to two of these individuals from Derryberry from his business address showing FICA withheld in the amount of $1,430.43 and federal income tax withheld in the amount of $2,237.03. Defendant's Exhibit BB; Court's Exhibits 25 and 26. Derryberry did not deny issuance of these W–2's.

The IRS agent assigned to this bankruptcy case, Andrew Okapal of the IRS office at Findlay, Ohio, testified at the hearing that he orally contacted Derryberry regarding the withholding issue on October 17, 1986. Agent Okapal testified that Derryberry stated that he was maintaining the same employment relationship with the three individuals as that of the prior employer (Debtor-in-Possession). Agent Okapal then wrote to Derryberry on October 21, 1986 enclosing a completed form 943, a tax return for Derryberry's signature to evidence these withholdings. See Court's

Exhibit 24. He also testified that he attempted to contact Derryberry by telephone in December, 1986. Agent Okapal's next contact with Derryberry was on February 2, 1987, when Derryberry called him requesting another copy of the tax return. Derryberry testified that upon his return to his office on February 2, 1987, after the conclusion of his criminal trial, he called Agent Okapal in response to a telephone message. Derryberry maintained that he did not make distribution in accordance with the January 8, 1987 order as penalties and interest on the IRS' claims had not been calculated. However, Derryberry was aware that Agent Okapal, who is of the Findlay office of the IRS, was not responsible for filing proofs of claim and calculating penalties and interest thereon. The special procedure branch in the Cleveland office of the IRS is responsible for such claims. Therefore, if Derryberry were concerned for the penalties and interest on the proofs of claim, he would not have contacted Agent Okapal. Derryberry's explanation for failure to make distribution is less than credible.

Agent Okapal testified that Derryberry indicated in the February 2, 1987 conversation that while he recalled receiving the October information, he could not locate it. Derryberry testified that while he could not recall receipt of the October 21, 1986 letter, he may have received it but not attended to it in light of other priorities, specifically his indictment for perjury and embezzlement arising out of his trusteeship in the Hartley case. For these reasons, Derryberry did not distribute the funds pursuant to the January 8, 1987 order as he believed such distribution would result in personal liability. See Defendant's Exhibit M at 2.

The problems with Derryberry's failure to follow the court's January 8, 1987 order are many. An initial concern is when Derryberry became aware of a tax issue that should have been brought to the court's attention and who should bear responsibility for this oversight. The lengthy delay in distribution has, undoubtedly, adversely affected other creditors and their claims. For example, creditor BancOhio's witness testified that significant attorney fees had been incurred in light of the anticipated dividend, but that to date, no distribution had been received. Derryberry testified that he was prepared to distribute the checks at the hearing and to return the monies he had previously received as trustee fees and expenses to the estate until resolution of this problem. Although Derryberry testified that he did not distribute the funds in accordance with the January 8, 1987 court order as a result of tax issues, he also testified that he now stands ready to distribute these funds although the tax issues are still unresolved. Because unresolved tax issues are still pending, as evidenced by the W-2's showing FICA and federal income taxes withheld, it is necessary to appoint a successor trustee to resolve these issues. Additionally, pursuant to Agent Okapal's testimony, penalties and interest are accruing as a result of Derryberry's failure to remit these amounts, all to the prejudice and loss of the estate.

■ 11 U.S.C. § 326 permits the court to allow reasonable compensation to a trustee for his services. This section is a limitation on a trustee's compensation and its language is permissive rather than mandatory. See 2 Collier on Bankruptcy ¶ 326.01, at 326-3 (15th ed. 1987). 11 U.S.C. § 330(a) permits a trustee reasonable compensation for actual, necessary services.

■ However, where the trustee has misused Debtor's funds, the bankruptcy court may withhold compensation. In Re Endeco, Inc., 675 F.2d 166, 167 (8th Cir. 1982) (decided under the Bankruptcy Act but theory still applies). Abuses may include failure to report the condition of the estate, misuse of funds and failure to deposit funds in the designated depository. In Re Stillwell, 12 F.2d 205, 206 (6th Cir. 1926). Furthermore, where damages are inflicted upon creditors as a result of an attorney's improper actions, such losses should be borne by the offender as a sanction. Matter of Lowe, 18 B.R. 20, 23 (Bkrtcy.N.D.Ga.1981). Lastly, where a trustee has allowed self-interest to come before the interests of the estate, denial of compensation is warranted. In Re Redman, 69 B.R. 27, 15 B.C.D. 657, 658 (Bkrtcy.D.Hawaii 1986).

■ Derryberry received payment of his trustee fees and expenses in PAB. See Court's Exhibit 13. These checks are dated January 8, 1987. Derryberry testified that his secretary originally typed January "6", 1987 and that Derryberry by hand changed this date to reflect the same date as that of the order to distribute. The check reflects receipt by the bank on January 13, 1987. Thus, Derryberry received his monies while obstructing disposition of creditors' funds. Additionally, Derryberry testified that he did not attend the final hearing on January 6, 1987, although court records reflect otherwise. See Court's Exhibit 11. He testified, however, that he dated the checks the same date as the order to distribute, January 8, 1987. He deposited his checks on January 13, 1987. It is inconsistent for Derryberry to have dated and deposited his checks without having reviewed the order to distribute and yet he was unable to have reviewed it prior to his trial date. Furthermore, it is obvious that Derryberry's primary concern was for his check. Such interest warrants forfeiture of his compensation. To date, the pending IRS withholding issue is still unresolved. In light of this situation, the court finds that Derryberry should forfeit the monies received in the amount of $7,710.15 representing payment of trustee fees and pay these monies back to the estate.

■ 11 U.S.C. § 324(a) allows the court to remove a trustee "for cause." "Sole discretion for such removal is vested with the court." 2 *Collier on Bankruptcy* ¶ 324.01, at 324–2 (15th ed. 1987). "Cause" justifying removal includes injury to the estate. *In Re Freeport Italian Bakery, Inc.*, 340 F.2d 50 (2nd Cir.1965).

■ The duties of the trustee are set forth in 11 U.S.C. § 704. These duties include that the trustee shall "close [the] estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(1). As previously discussed, the delay in closing this estate has injured the estate and its creditors. No doubt, attorney fees will be incurred by creditors in analyzing the pending IRS claims, thus further injury will be sustained by creditors as a result of Derryberry's neglect in resolving these issues. In light of the foregoing, the court finds that Derryberry should be removed as trustee of the estate of PAB and a successor trustee be appointed.

A second issue concerning the PAB estate concerns Derryberry's representation of the tax situation. Canon 1 provides:

A lawyer should assist in Maintaining the Integrity and Competence of the Legal Profession.

EC 1–5 states:

A lawyer should maintain high standards of professional conduct and should encourage fellow lawyers to do likewise. He should be temperate and dignified, and he should refrain from all illegal and morally reprehensible conduct. Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude.

DR 1–102(A)(4) is premised on the above Canon and ethical consideration and provides:

A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

These disciplinary rules are part of the code of professional responsibility as adopted by the Supreme Court of Ohio. According to the code, these rules "... state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." Derryberry testified that he had been a member of the bar since 1970. These rules, then, apply to Derryberry.

IRS Agent Okapal testified that he initially orally contacted Derryberry on October 17, 1986, and that he subsequently wrote to him on October 21, 1986. See Court's Exhibit 24. Creditor BancOhio filed a motion for order discharging trustee and appointing successor trustee on August 8, 1986. See Court's Exhibit 7. The December 4, 1986 order dismissing this motion states that:

BancOhio [is] satisfied that all matters necessary to be done by the trustee for

the closing of [this] case [has] been done . . .

See Court's Exhibit 10.

A hearing on this final account was held on January 6, 1987. Although Derryberry testified that he did not attend that hearing, his appearance was noted. See Court's Exhibit 11. Agent Okapal wrote to Derryberry in October, after creditor's motion for appointment of successor trustee in August. While Derryberry could not remember receipt of that letter, he did not deny receipt. Derryberry's representations to creditor and willful and deliberate failure to disclose the existence of tax problems caused it to dismiss its motion in December. See Court's Exhibit 10. Undoubtedly, if creditor had been aware of the tax problems, it would have pursued its motion for appointment of a successor trustee. Regardless of Derryberry's attendance, or lack thereof, at the final hearing, no indication of tax problems was given then or before that date. Derryberry failed to disclose any tax problem at the hearing on January 6, 1987 which was attended by attorney for trustee and counsel for movant BancOhio National Bank. See Court's Exhibit 11. Even if Derryberry was not actually told that a tax problem existed, he should have been aware of that possibility as a result of his issuance of W-2's in 1983 and more recently the October 21, 1986 letter from Agent Okapal. See Court's Exhibits 24, 25 and 26; Defendant's Exhibit BB.

Misrepresentation refers to "any manifestation by words or other conduct by one person to another that under the circumstances, amounts to an assertion not in accordance with the facts." Black's Law Dictionary 903 (5th ed. 1979). In the instant situation, Derryberry misrepresented that the PAB estate was ready for closing when in fact it was necessary to resolve the pending IRS issue. Even if Derryberry were not aware of the October 21, 1986 letter from Agent Okapal, he should have been aware of the withholding issue as a result of his payment of salaries to the individuals working for him while he operated Debtor's business in 1983. In light of Derryberry's 17 years of bankruptcy experience, this possibility is more than plausible. Additionally, Derryberry testified that he continued the same relationship with those individuals as that of the former employer (Debtor-in-Possession). He also stated that he paid all the expenses of the business and furnished the individuals with all materials and supplies, evidencing an employer-employee relationship, rather than an independent contractor arrangement. See 3 O.Jur.3d Agency § 203 (1978). The court finds the evidence to be clear and convincing that Derryberry was aware of an IRS problem that required resolution prior to distribution which he willfully and deliberately, and for his own personal gain, failed to disclose to creditor BancOhio National Bank and to the court resulting in prejudice to the creditors of PAB.

DR 6–101(A)(3) states:

A lawyer shall not neglect a legal matter entrusted to him.

Derryberry has neglected a legal matter entrusted to him by his failure to advise the court and creditors of the tax issues prior to the order of distribution. Derryberry could have paid the 1983 withholdings at the time they were originally due and payable and avoided any interest and penalties. Alternatively, he could have resolved any possible dispute with IRS at that time. However, to date, Derryberry has done nothing in furtherance of resolution of this matter.

■ Additionally, although the court did not set forth DR 1–102(A)(5) as an additional ground for Derryberry's disbarment in its March 5, 1987 order to show cause, the facts adduced at the hearing clearly establish Derryberry's violation of this disciplinary rule. DR 1–102(A)(5) provides:

A lawyer shall not engage in conduct that is prejudicial to the administration of justice.

See Disciplinary Counsel v. Hastie, 29 Ohio St.3d 28, 505 N.E.2d 261 (1987). Additionally, the trustee as an officer of the court is responsible for promoting and assisting in the administration of the estate. Redman, 69 B.R. 27, 15 B.C.D. at 658.

Derryberry, by his failure to disclose the tax problems and by failing to distribute the funds in accordance with the January 8,

1987 order, has engaged in conduct prejudicial to the administration of justice and this case.

■ The "bankruptcy court has the inherent and statutory power and authority to suspend or remove any attorney from the roll of attorneys allowed to practice" before it. *Lowe*, 18 B.R. at 26. *See also* 4 C. Wright & A. Miller, Federal Practice and Procedure § 1019 (1969). Disbarment proceedings

> are not for the purpose of punishment, but rather seek to determine the fitness of an official of the court to continue in that capacity and to protect the courts and the public from the official ministration of person unfit to practice.

*In Re Echeles*, 430 F.2d 347, 349 (7th Cir. 1970) (citation omitted). *See also Re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968) (disbarment is designed to protect the public), *reh'g denied* 391 U.S. 961, 88 S.Ct. 1833, 20 L.Ed.2d 874 (1968); *In Re Quimby*, 359 F.2d 257 (D.C. Cir.1966) (administration of justice rests on premise that clients and court must be able to rely on integrity of attorneys); *Levenson v. Mills*, 294 F.2d 397 (1st Cir.1961) (maintain bar's reputation for integrity and respectability); *Matter of Caruso*, 414 F.Supp. 43 (D.N.J.1976) (conduct demonstrates unworthy to be a member of this court's bar); *Lowe*, 18 B.R. at 23 (protect public from attorney's actions). The court not only has the authority to discipline an attorney for misconduct, but it also has the responsibility for imposing serious sanctions. *Lowe*, 18 B.R. at 25; *Ceramco, Inc. v. Lee Pharmacuticals*, 510 F.2d 268 (2d Cir.1975); *Echeles*, 430 F.2d at 350.

■ Derryberry has violated DR 1–102 and DR 6–101 as evidenced by the facts. Derryberry's actions demonstrate an unfitness for the office of trustee as well as for a member of this court's roll of attorneys. The court not only has the authority to make this finding but also has the responsi-

bility to take this action in order to protect the integrity of this court, its bar and the public from such misconduct. Thus, the court finds that as a result of Derryberry's unfitness, he should be disbarred from practicing before this court. While these violations are sufficient to remove Derryberry's name from the roll of attorneys admitted to practice before this court, the following discussion also amply demonstrates other misconduct by Derryberry further supporting this court's finding.

*Chapter 13 Guidelines Number 2—Annual Audit*

■ Guideline Number 2 of the Chapter 13 Guidelines promulgated by the Judicial Conference states:

> That where the annual receipts of a chapter 13 trustee exceed $100,000, there should be an annual audit by an independent accountant.

See Court's Exhibit 17 at 4.[1]

Derryberry testified that he is willing to submit to an audit but that such audit should be paid by the court as he cannot afford it. He also indicated that because the successor trustee now has responsibility for the files, the successor trustee should also have the responsibility for payment of the audit expense.

Comments to Guideline Number 2 include:

> The cost of the audit is a legitimate expense item of the trustee and normally is paid for by the trustee out of his expense allowance.

See Court's Exhibit 17 at 8. 11 U.S.C. § 326(b) sets forth the maximum compensation for a trustee's services under a chapter 13 case as "not to exceed five percent under all payments under the plan." A chapter 13 trustee is also entitled to reimbursement for expenses. 11 U.S.C. § 330(a)(2). It is the custom of this court to allow the maximum fees and expenses

---

1. *Guide to Judiciary Policies and Procedures on Chapter 13 Matters,* Judicial Conference of the United States, Volume V, Part A. Note that the March 31, 1986 guidelines amended the 1983 guidelines and, as such, reorganized and renumbered these guidelines. Additionally, the 1986 guidelines provided that an annual audit was

required where the annual receipts equalled or exceeded $200,000, changing the prior $100,000 requirement. Also note these guidelines are promulgated pursuant to 28 U.S.C. § 331 which provides that the Conference shall submit suggestions and recommendations to promote expeditious conduct of court business.

totaling 10% of the trustee's annual gross receipts, pursuant to former 11 U.S.C. § 1302(e)(1) and (2). This practice is calculated by attributing 5% of this amount to compensation and 5% to expenses. These amounts are automatically paid to the trustee upon each Debtor's regular disbursement. This cost is borne by the debtor. See Court's Exhibit 17 at 4.

The 1986 audit of Derryberry's chapter 13 cases, then, should be paid from monies he received as expenses during 1986. Derryberry's audit for 1984 shows gross receipts in the amount of $408,298 and Derryberry's receipt of $17,719 as compensation and $19,457 as expense. See Court's Exhibit 27. He paid during 1984, $750 for the prior year's audit. See Court's Exhibit 27 at 3. Derryberry's 1985 audit shows gross receipts of $421,759 and Derryberry's receipt of $16,728 as compensation and $19,726 as expenses. See Court's Exhibit 28. He paid $475 that year for the 1984 audit. Court's Exhibit 28 at 4.

Although Derryberry testified that the audit is paid at creditors' expense, the statute and comments state otherwise. Additionally, Derryberry's receipts in 1986, presumably, would amount to about the same as those in 1985 as he was allowed to maintain his case load until October, 1986, and he still had, as of the date of the hearing, several cases. See discussion *infra*, at 883. The audit for 1986 is for the fiscal year ending September 30, 1986. The 1984 audit paid in 1985 should have been paid from the 1984 expense fund. See Court's Exhibit 17 at 8. The 1984 audit cost $475 and should have been paid from the $19,457 expense money. The audit cost thus represents .12% of Derryberry's total receipts in 1984.

> As a rule of thumb ... the cost of the audit should not exceed .6% (.006) of the trustee's total receipts for that year ...

See Court's Exhibit 17 at 7. Derryberry's audit for 1986 would cost substantially less than .6%, based on his 1984 and 1985 audits. This expense is charged against his expense monies received in 1986 for the fiscal year ending September 30, 1986.

If Derryberry is unable to afford this audit as he testified, this may only result fom Derryberry's negligence, in failing to make provision for the cost of the 1986 audit from monies received as expenses in 1986. The court is not responsible for Derryberry's oversight. At the conclusion of the hearing, Derryberry had still refused to submit to and pay for an independent audit. This refusal exemplifies Derryberry's contemptuous attitude and disregard for court orders and judicial conference guidelines. The court finds that Derryberry is required to make arrangements and pay for the audit.

Additionally, in *Flourney v. Hershner*, 68 B.R. 165 (M.D.Ga.1986), a chapter 13 trustee, who had been removed by the bankruptcy court in order to consolidate its chapter 13 trustee cases to one trustee, requested that the successor trustee pay his audit expense. The court stated that:

> to the extent that the scope of the audit does not exceed what has been usually required in past years, the expense is to be charged to [the] trustee expense account.

*Id.* at 169. Furthermore, unlike the trustee in *Flourney*, Derryberry voluntarily resigned from his chapter 13 cases. See Court's Exhibit 16. Thus, Derryberry should be directed to pay the audit expense.

Derryberry also asserted that the estate administrator suggested that another auditor be employed to perform the 1986 audit. The estate administrator testified that such a statement was untrue. In fact, the estate administrator testified that he had spoken with Derryberry last fall and around Christmas indicating that the same firm that had performed the prior years' audits was an acceptable firm.

To date, as admitted by Derryberry, no audit has been filed. The audit should be made between October 1 and December 15. See Court's Exhibit 17 at 5. The estate administrator testified that Derryberry's 1984 audit was filed April 15, 1985 and that his 1985 audit was filed February 18, 1986. Derryberry has received sufficient funds from which the audit cost should be charged. The accounting firm that performed this audit in the past is available to perform the 1986 audit. The court finds,

then, that Derryberry should be directed to arrange and pay the 1986 audit of his chapter 13 cases.

*Chapter 13 Guideline Number 1—Annual Report*

Guideline Number 1 of the Chapter 13 Guidelines promulgated by the judicial conference states:

That chapter 13 trustees be required to maintain standard basic records and that reports be submitted ... annually to the bankruptcy division of the Administrative Office of the United States.

See Court's Exhibit 17 at 1.

Derryberry testified during the hearing, specifically April 9, 1987, that he had that day submitted his 1986 annual report. The court is not formally aware of the report nor any of its contents. Neither is the court informally aware of the report's contents as Derryberry offered no testimony on this point. The report, however, is of no significance absent an audit certifying its contents. Additionally, the report was due December, 1986.

*Order to Turnover Estate Funds and Records*

In August, 1986, Derryberry was indicted by a grand jury on two counts of perjury, one count of conspiracy and one count of embezzlement, as a result of his involvement as trustee of the estate of James Ross Hartley and Sharon Lee Hartley, Case No. 81–01855. He was convicted of embezzlement and one count of perjury in January, 1987. As a result of his conviction, Derryberry was removed, pursuant to court order entered February 2, 1987, as trustee of that estate and as trustee in 50 other bankruptcy cases. See Court's Exhibits 18 and 20. In accordance with the orders appointing successor trustees, Derryberry was ordered to:

Turnover to the successor trustee immediately upon his qualification all estate funds, property of the estate, books and records under his control.

See Court's Exhibits 19 and 21. Additionally, on October 10, 1986, Derryberry's chapter 13 cases were transferred to a successor trustee and Derryberry was ordered to:

Turnover to the successor trustee immediately upon his qualification all estate funds, property of the estate, books and records under his control.

See Court's Exhibit 16.

The estate administrator testified that he received telephone calls from the successor trustees regarding turnover of estate properties. The estate administrator wrote Derryberry in the middle of February advising Derryberry of the acceptances of appointment as successor trustees by Trustee O'Brien and Trustee Dobnicker and advising Derryberry to turnover the estate properties forthwith. Further, the estate administrator testified that he received letters from Trustee O'Brien and Trustee Dobnicker in late February complaining of the lack of estate materials and the problems they were experiencing as a result thereof.

One of the successor trustees, W. Scott O'Brien, testified that he filed his acceptances in those cases assigned to him on February 11, 1987 and February 13, 1987. He wrote to Derryberry on February 17, 1987, regarding turnover of the materials. Although he attempted to reach Derryberry by telephone on February 21, 1987, he was unsuccessful and did not make contact until February 25, 1987. Trustee O'Brien testified that Derryberry stated that he did not know when he would be able to get the materials together, to which Trustee O'Brien responded that he was the successor trustee and the one responsible for the files now. A meeting was finally arranged on March 4, 1987, at which time Derryberry turned over the estate materials.

The chapter 13 successor trustee, Anthony B. DiSalle, to whom the 85 chapter 13 cases were assigned after Derryberry's resignation, testified that he received all estate funds by November 6, 1986. However, it was not until February 20, 1987, that he received all but five files, those five files being Case No. 82–00294, 82–01366, 82–01627, 82–01933, 83–08258. Trustee DiSalle testified that he sent a letter to Derryberry on January 8, 1987, requesting the files. Trustee DiSalle testified, as did Derryberry, that Derryberry retained the files

in order to file his annual audit. However, Trustee DiSalle stated that copying these files was feasible. Trustee DiSalle testified on the first day of the hearing, April 3, 1987, that he now had all the files.

Compliance with court orders and respect for the court itself is mandatory. *Smith v. Stone*, 308 F.2d 15 (9th Cir.1962). Otherwise, "chaos would result." *Id.* at 18. An attorney "who is ordered to perform an act must comply 'promptly' with the order." *In Re Edgehill Nursing Home, Inc.*, 68 B.R. 413, 415 (E.D.Pa.1986) (citations omitted).

Derryberry did not comply with this court's orders of February 2, 1987 and October 10, 1986. Trustee O'Brien stated that he filed acceptances of those cases assigned to him on February 11 and February 13, 1987. He did not receive the materials until March 4, 1987. Trustee DiSalle testified that he accepted all cases assigned to him and the court records reflect filing of his acceptances on October 16, 1986. DiSalle received the last five cases on April 3, 1987.

With regard to these five cases, Case No. 82–00294, 82–01365, 82–01627, 82–01933, 83–00258, it was Derryberry's position that these cases need not be transferred as they represented cases that were ready for closing as he had filed his closing report in these cases. Upon review of these cases, four were closed on January 30, 1987, three and half months after the successor trustee's acceptances. One case is still pending. *In Re Jackson*, No. 82–01627 (Bkrtcy.N.D. Ohio filed Aug. 31, 1982). Review of that docket and its file reflect numerous filings occurring after the October 10, 1986 order. These matters merit trustee attention and until resolution of these matters, the case is not in a posture for closing.

Discharge hearings, representing final adjudication of Debtor's case were not held until December 2, 1986 in Case No. 82–01933 and January 6, 1987 in Case No. 82–01365. Derryberry's assertion that these cases were ready for closing is in error as the filing of a trustee's closing report is not the final document filed before closing. His statement is inaccurate not only in theory but also in fact as evidenced by Case No. 82–01627. It is obvious that Derryberry did not comply with this court's orders. He failed to turnover estate properties to the qualifying successor trustees on the dates of their acceptances.

11 U.S.C. § 105 enables the court to issue orders necessary to carry out the provisions of the code. Specifically, subsection (a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This statute, then, empowers this court to, sua sponte, take any action necessary to enforce its orders. Acting Chief Judge Barefoot Sanders recently stated that § 105(c) provides that the powers of a bankruptcy judge are subject to 28 U.S.C. § 157 and that:

> § 157 in its present form was enacted in response to *Marathon* and was designed to give bankruptcy judges the greatest possible powers in order to fulfill their functions under Title 11....

*Kellogg v. Chester*, 71 B.R. 36 (N.D.Tex. 1987). The bankruptcy court's civil contempt power is derived from 11 U.S.C. § 105. *Edgehill Nursing Home, Inc.*, 68 B.R. at 415. *See also In Re McLean Industries, Inc.*, 68 B.R. 690, 695 (Bkrtcy.S. D.N.Y.1986). Additionally, this court has "inherent contempt power to enforce compliance with [its] orders." *McLean Industries, Inc.*, 68 B.R. 690. *See also In Re Haddad*, 68 B.R. 944 (Bkrtcy.D.Mass.1987).

> The power of the bankruptcy judge to issue sanctions for contempt of an attorney is not limited to monetary punishment; it includes the power to discipline an attorney for such conduct in cases and proceedings in this court.

*Lowe*, 18 B.R. at 24.

Derryberry not only failed to comply with the court order of October 10, 1986,

but he unilaterally determined that five cases were not to be transferred as he erroneously deemed them ready for closing. The court finds that in light of Derryberry's noncompliance with this court's orders, discipline is appropriate. *See also* 2 *Collier on Bankruptcy* ¶ 324.03, at 324–7 (15th ed. 1987) (trustee has a duty to file a final account and turnover all properties to his successor). Additionally, these facts further support Derryberry's violation of DR 6–101(A) as he neglected to turnover estate materials, a legal matter entrusted to him.

### Order to File Final Reports

Another provision of the October 10, 1986 entry ordered Derryberry to:

... file a final report on all cases being transferred no later than thirty (30) days from the date the successor trustee has qualified.

See Court's Exhibit 16.

As previously stated, the chapter 13 successor trustee qualified on October 16, 1986. The estate administrator testified that he had reviewed those cases assigned to this judge and that with the exception of the five cases listed above, final reports had been filed. However, no reports had been filed in those five cases. Derryberry testified that he considered his closing report in the excepted five cases to be adequate.

In accordance with *Edgehill Nursing Home, supra,* Derryberry was to "comply promptly" with the October 10, 1986 order and file final reports on or before November 16, 1986. Because Derryberry did not comply with the order, sanctions are appropriate, including disciplinary measures.

Once again Derryberry has violated DR 6–101(A) on the facts as he neglected legal matters entrusted to him as he failed to file within 30 days of the successor trustee's qualification, final reports in chapter 13 cases.

 Derryberry testified that as a result of his priorities including attempts to dismiss his indictment in August, his criminal trial in January, and his current post trial motions, he has been preoccupied and unable to concentrate on many of these tasks. However, in ruling on a motion for extension of time for filing a notice of appeal, the court in *Chipperfield v. Posi-Seal Intern.,* 550 F.Supp. 1322 (D.R.I. 1982), stated that an attorney's personal problems did not provide adequate excuse for failing to timely file its notice of appeal. Derryberry's personal priorities, then, cannot justify his failures to comply promptly with court orders and judicial conference guidelines. Additionally, severe disciplinary action is warranted even though an attorney may act as a result of stress. *In Re Quimby,* 359 F.2d 257, 258 (D.C.Cir. 1966). Furthermore, although Derryberry testified that as a result of time constraints he was unable to engage in new clients, he has, since January 1, 1987, filed six new bankruptcy cases. He has not, however, found time to attend to and complete his duties mandated by the Judicial Conference of the United States and orders of this court.

### Conviction of Felonies

DR 1–102(A)(3) states:

A lawyer shall not engage in illegal conduct involving moral turpitude.

Additionally, DR 7–102(A)(5) and (8) provide:

In his representation of a client, a lawyer shall not knowingly make a false statement of law or fact; and

\* \* \* \* \* \*

In his representation of a client, a lawyer shall not knowingly engage in other illegal conduct or conduct contrary to a disciplinary rule.

As previously discussed, Derryberry has been convicted of embezzlement and perjury. See *supra,* at 883. Derryberry did make a false statement as evidenced by his perjury conviction and he has, therefore, violated DR 1–102(A)(3) and DR 7–102(A)(5). Derryberry also was convicted of embezzlement and has engaged thus in illegal conduct, violative of DR 7–102(A)(8).

L.Civ.R. 2.09, made applicable to bankruptcy procedure pursuant to L.Civ.R. 1.01, provides:

Any member of the Bar of this Court may, for good cause shown, and after

having been given an opportunity to be heard, be disbarred, suspended from practice for a definite time, reprimanded, or subjected to such other discipline as the Court may deem proper.

Whenever it is made to appear to the court that any member of its Bar has been disbarred, suspended from practice or convicted of a felony in any other court, he shall be suspended forthwith from practice before this court; and, unless upon notice mailed to him at his last known place of residence he shows good cause to the contrary within 10 days, there shall be entered an order of disbarment or of suspension for such time as the Court shall fix.

■ This rule permits this court, then, to disbar Derryberry as a result of his convictions. Derryberry maintains that such action is premature in light of pending post trial motions and possible appeal. However, this court has inherent authority to regulate members of its bar. *See Lowe, supra.* The sixth circuit stated in *D.H. Overmyer Co., Inc. v. Robson,* 750 F.2d 31 (6th Cir.1984) that:

The bankruptcy court has both statutory and inherent authority to deny [an attorney] the privilege of practicing before it.

*Id.* at 33.

Additionally, L.Civ.R. 2.09 permits the court "for good cause shown" to discipline a member of its bar. While this court may discipline Derryberry for his failure to comply with guidelines promulgated by the Judicial Conference of the United States and with orders of this court, such action

shall not affect the right of [Derryberry] to continue to practice in the United States District Court, other federal courts, or the courts of the State....

*Lowe,* 18 B.R. at 26.

*Motion for Recusal*

Derryberry's counsel made an oral motion for disqualification of this judge on the basis of discussions with the estate administrator outside the hearing as such discussion would color the judge's perception of the facts. No rule of law was proffered by counsel in support of this motion. The estate administrator testified that he had discussed the status of a number of issues with the court in response to the court's request. He indicated that only general discussions regarding issues contained in the show cause order were had. He testified that no specific questions were asked of him at these discussions nor was he coached regarding his testimony on direct or cross examination. In fact, the discussions concerned only matters of record.

■ 28 U.S.C. § 455 sets forth instances in which a judge should disqualify himself to include a "proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial.

The alleged bias must derive from an extra-judicial source.... The nature of the judge's bias must be personal and not judicial.

*In Re Beard,* 811 F.2d 818, 827 (4th Cir. 1987) (citations omitted).

■ The estate administrator who testified at the hearing is also currently serving as deputy clerk in charge. As such, he is to "report periodically to the court regarding trustee matters for such further review and action as the court deems proper." See *Chapter 13 Guideline Number 1 Promulgated by the Judicial Conference* March 31, 1986. This witness, then, has a duty to report to this court any deficiencies of Derryberry. Additionally, this witness testified that he only spoke of matters of record with the court; this same information is available to Derryberry. This witness' duties under the Judicial Conference Guidelines include informing the court of practices and procedures and abuses thereof. Thus, no extra judicial source exists to require recusal in this matter. All information was judicial. No reasonable mind could, then, have a basis for questioning the judge's impartiality.

28 U.S.C. § 455(b)(1) states that a judge must disqualify himself "where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." It was stated on the record that a motion

for Derryberry's removal as trustee had been initiated before in the Hartley estate. See *In Re Hartley*, 50 B.R. 852 (Bkrtcy.N.D.Ohio 1985). The decision of the court upon that motion was to find that no grounds existed for Derryberry's removal. This decision was appealed to the district court. After Derryberry's indictment, the district court remanded that decision to this court to remove Derryberry in light of his indictment. See *The Peoples Banking Company v. Quentin M. Derryberry, II, Trustee*, No. C 85–7785 (D.N.D.Ohio filed Oct. 16, 1986). This court did not remove Derryberry at that time and an appeal was taken from that order. It was only after his conviction for perjury and embezzlement that he was removed. See Court's Exhibit 18. It is apparent, then, that this court has no personal bias or prejudice which may color this opinion. Counsel's motion for recusal was denied.

Furthermore, this opinion is based solely upon testimony and other evidence adduced at the hearing. No partiality exists.

## CONCLUSION

Good cause exists to discipline Derryberry in light of his noncompliance and disrespect for the court's order. Derryberry failed to comply with this court's October 10, 1986 order regarding turnover of materials and filing final reports in 85 chapter 13 cases. See discussion *supra*, at 883 & 885. He failed to follow the February 2, 1987 order regarding immediate turnover of materials in 50 other cases. See discussion *supra*, at 883. Derryberry has not followed the judicial conference guidelines as he has failed to submit an annual audit and to file a timely annual report. See discussion *supra*, at 881 & 883. Derryberry has violated several disciplinary rules including 6–101 regarding neglecting a matter entrusted to him, as evidenced by the above failures to promptly perform ordered actions; he has misrepresented facts as prohibited by DR 1–102 as evidenced by the tax situation in PAB; and he has made false statements as evidenced both by the tax situation in PAB and his perjury conviction and engaged in illegal conduct and conduct contrary to disciplinary rules in

violation of DR 7–102. Finally, he has failed to comply with the January 8, 1987 order to distribute entered by this court in PAB.

The court is aware that the penalty of disbarment is a harsh measure and, therefore, does not take this matter lightly. Unfortunately, Derryberry did take these matters lightly as evidenced by his cavalier demeanor and attitude and willful disregard of this court's orders and guidelines of the Judicial Conference of the United States. Any other sanction would encourage chaos and breed contempt for this court's orders and rules. Disbarment from practicing before this court is a severe disciplinary measure. However, the court cannot abdicate its duty and responsibilty to ensure that judicial conference guidelines and this court's orders and rules are followed; otherwise, chaos would result. Derryberry's failures are sufficient for this court to discipline Derryberry by striking his name from the roll of attorneys admitted to practice before this court.

In light of the foregoing reasons, it is therefore

ORDERED that Quentin M. Derryberry, II, be, and he hereby is, removed as trustee of the estate of Pigs are Beautiful, Inc., Case No. 81–02210 and his fee forfeited. It is further

ORDERED that that portion of the order dated January 8, 1987 allowing Quentin M. Derryberry, II, $7,710.15 as trustee's fees be, and it hereby is, vacated. It is further

ORDERED that judgment is hereby entered against Quentin M. Derryberry, II, to pay to the estate of Pigs are Beautiful, Inc., Case No. 81–02210, the sum of $7,710.15 representing trustee's fees within ten days of the date of this order. It is further

ORDERED that the clerk of this court submit the name of a trustee from the panel established by the Administrative Office of the U.S. Courts to the court who is willing to accept appointment in this case as successor trustee under 11 U.S.C. § 703. It is further

ORDERED that Quentin M. Derryberry, II shall cause an independent audit to be made of his administration of chapter 13 cases for the fiscal year ending September 30, 1986 and pay for the same at his own expense which shall be filed with the court within 30 days of the date of this order. It is further

ORDERED that Quentin M. Derryberry, II,'s name be, and it hereby is, removed from the roll of attorneys admitted to practice before this court. It is further

ORDERED that Quentin M. Derryberry, II be, and he hereby is, disbarred from practicing before this court.