## In the Matter of Ruben JOHNSON, Debtor.

**Mary Carol CUNNINGHAM, Appellant,**

v.

**R. Glen AYERS, Jr., Appellee.**

No. 90–8249.

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1991.

Edwin F. Guyon, Salt Lake City, Utah, Martin Warren Seidler, San Antonio, Tex., for appellant.

Mark H. Marshall, Asst. U.S. Atty., Ronald F. Ederer, U.S. Atty., Austin, Tex., for appellee.

Before WISDOM, GEE, and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

This is an appeal from an order issued by former Bankruptcy Judge R. Glen Ayers, Jr. holding Mary Carol Cunningham in contempt of court. Because we agree with appellant Cunningham that Judge Ayers should have recused himself from conducting the contempt proceeding, we REVERSE the district court's affirmation of the contempt order. We VACATE the contempt order.

## BACKGROUND

Cunningham, who was serving as a Chapter 7 Bankruptcy Trustee, was held in contempt along with Beth Fielding Siever, who was serving as attorney for the trustee, for their participation in certain events that took place on March 31, 1988 at the bankruptcy court in Austin, Texas. At that time Cunningham obtained from Bankruptcy Judge Larry Kelly a court order authorizing overtime pay for a United States Marshal who would accompany her to the debtor's offices, where the debtor was allegedly removing the bankruptcy es-

tate's property. Judge Kelly stated on the record that he had entered the order on behalf of Judge Ayers, to whom the action was assigned, based upon certain representations made by Cunningham and Siever. On April 4, 1988, Judge Ayers ordered Cunningham and Siever to show cause why they should not be sanctioned or held in civil contempt. After the hearing, Judge Ayers found Cunningham and Siever in civil contempt for misrepresenting that he had requested Judge Kelly to sign the order on Judge Ayers's behalf. Judge Ayers had simply informed Cunningham, through his law clerk, that he would not grant her request and that she should "talk to Judge Kelly."

Judge Ayers, in his Order Determining Contempt signed June 13, 1988, imposed the following penalties on Cunningham for misrepresenting his statements to Judge Kelly:

> IT IS THEREFORE ORDERED that Mary Carol Cunningham should be removed as trustee of the Ruben Johnson case and all other cases in which she is currently serving as trustee; it is further ORDERED that Mary Carol Cunningham should be removed from the standing panel of Chapter 7 trustees for the Western District of Texas; it is further ORDERED that Mary Carol Cunningham is suspended from the practice of law before the Bankruptcy Court for the Western District of Texas for one year from the date this order becomes final. Mary Carol Cunningham will not be readmitted to practice before the Bankruptcy Court for the Western District of Texas until she has successfully passed (according to the standard required of all attorneys prior to their admission to the State Bar of Texas) the Multi–State Professional Ethics Examination and reported

such to the Chief Bankruptcy Judge for the Western District of Texas.

Cunningham appealed to the district court for the Western District of Texas, which, after conducting a *de novo* review of the case, affirmed Judge Ayers's decision on March 28, 1990. Cunningham then appealed to this Court.[1]

## DISCUSSION

Although Judge Ayers referred to the hearing as a contempt proceedings, he also indicated that he considered the proceedings to be disciplinary.[2]

Bankruptcy Code § 105(a) provides that "[t]he court may issue any order, or judgment that is necessary or appropriate to carry out the provisions of this title." Courts have used this statute as a basis for holding that bankruptcy courts have both statutory and inherent authority to deny attorneys and others the privilege of practicing before that bar. *See In re Derryberry*, 72 B.R. 874, 881 (Bankr.N.D.Ohio 1987) and citations therein. *See also In re Heard*, 106 B.R. 481, 484 (Bankr.N.D.Ohio 1989). The court in *In re Derryberry*, stated:

> Disbarment proceedings are not for the purpose of punishment, but rather seek to determine the fitness of an official of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice. 72 B.R. at 881, citing *In re Echeles*, 430 F.2d 347, 349 (7th Cir.1970).

Moreover, Local Rule 200–2 of the Local Rules of the United States District Court for the Western District of Texas specifically provides for the suspension or disbarment of attorneys from practice in the Courts of the Western District of Texas.[3]

---

1. Only Cunningham's appeal is before this Court.

2. In his order rejecting appellant's argument that the bankruptcy court did not have jurisdiction to hold her in criminal contempt and denying her motion for new trial, Judge Ayers stated:
   ... this court need not made (sic) the determination as to whether Ms. Cunningham is in civil or criminal contempt. This Court has only

suspended Ms. Cunningham from practice before the Bankruptcy Court, removed her as Bankruptcy Trustee, and required her to pass an ethics exam which all attorneys who begin to practice law must pass. This ruling is strictly limited to the Bankruptcy Court and does not extend beyond the bounds of the Court's jurisdiction.

3. Local Rule 200–2 provides:

The Local Rules have been expressly made applicable to bankruptcy court proceedings. *See In re Local Rules*, United States Bankruptcy Court, Western District of Texas (W.D.Tex., May 22, 1985) (Order of District and Bankruptcy Judges).

Even though a bankruptcy court does have the power to conduct a disciplinary hearing and discipline the attorneys who practice before it, a judge is required to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b)(1) requires a judge to disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding...." These statutes are mandatory. In addition, the Code of Judicial Conduct, Canon 3(C)(1) provides that a judge should disqualify himself "in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: (a) he had a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding...."

"The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial. 'The alleged bias must derive from an extra-judicial source.... The nature of the judge's bias must be personal and not judicial.'" *In re Derryberry*, 72 B.R. at 886,

citing *In re Beard*, 811 F.2d 818, 827 (4th Cir.1987).

We find it unnecessary to go into much factual detail. The record makes clear that Judge Ayers considered Cunningham's actions to be a personal affront to his authority. Judge Ayers stated that he was "prejudiced in this matter;" that he had "all but made up [his] mind" as to what he was going to do in the case; that he was "not in the least inclined to be neutral;" and that he was serving as "complaining witness, prosecutor, judge, jury, and executioner" in the case.

Reviewing Judge Ayers's decision not to recuse himself under an abuse of discretion standard, we find that Judge Ayers's statements are such that a reasonable person would have a reasonable basis for questioning Judge Ayers's impartiality in the contempt proceeding. We hold that Judge Ayers should have recused himself and that the district court erred in affirming Judge Ayers's contempt order.

Cunningham is guilty, in the words of Judge Ayers, of acting with "an excess of zeal" to protect the estate of the debtor she was serving as trustee. We believe that this experience has sufficiently tempered her zeal. Furthermore, Judge Ayers has since retired from a distinguished career as a bankruptcy judge. No good purpose will be served by requiring the district court to conduct another hearing on this case.[4] Accordingly, we REVERSE the district

---

(a) When it is shown to the Court that any member of its bar has ... been guilty of conduct unbecoming a member of the Bar of the Court, he will be subject to suspension or disbarment by the Court. The member shall be afforded an opportunity to show good cause, within such time as the Court shall prescribe, why he should not be suspended or disbarred. Upon his response to the order to show cause, and after hearing, if requested, or upon expiration of the time prescribed for response if no response is made, the Court shall enter an appropriate order.

(b) The Court may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar or for fail-

ure to comply with these rules or any rule of the Court.

**4.** We note that there are some serious discrepancies as to the extent of the misrepresentations made by Cunningham. Siever, not Cunningham, expressly misrepresented to Judge Kelly that she had spoken to Judge Ayers and that he had requested that Judge Kelly sign an order granting her relief. There is no record that Cunningham was in Judge Kelly's courtroom at that time, nor is there evidence in the record indicating that Cunningham directed Siever to misrepresent the situation to Judge Kelly. There are also some serious discrepancies as to whether Cunningham actually told Judge Kelly's court deputy that she had spoken to Judge Ayers or whether that was just an "impression" the deputy received.

**588**

court's decision and VACATE the contempt order against Mary Carol Cunningham.