In re PLACID OIL COMPANY, Debtor.

William D. WRIGHT, Appellant,

v.

UNITED STATES of America, Appellee.

Bankruptcy No. 386–33419–HCA–11.
Civ. A. No. 3:93–CV–0017–D.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 22, 1993.

---

A.B. Conant, Jr. (argued), William B. Chaney, and Francis Hangarter, Jr. of Conant Whittenburg Whittenburg & Schachter, Dallas, TX, for appellant.

James A. Benton, Acting Asst. Atty. Gen., Louise P. Hytken, Atty. in Charge, and Grover Hartt, III (argued), Atty., Tax

Div., Dept. of Justice, Dallas, TX, for appellee.

FITZWATER, District Judge:

An attorney appeals a bankruptcy court order requiring him to disgorge attorney's fees and permanently disbarring him from practicing in the bankruptcy court. The court affirms the disgorgement directive and vacates and remands the disbarment sanction.

I

Appellant William D. Wright, Esq. ("Wright") appeals a bankruptcy court order directing that he disgorge the sum of $132,223.93 in legal fees and be permanently stricken from the list of attorneys admitted to practice law before the Bankruptcy Court for the Northern District of Texas. The court entered the order in connection with the bankruptcy of Placid Oil Company ("Placid"), a chapter 11 debtor which filed bankruptcy on August 29, 1986 and operated as a debtor-in-possession until plan confirmation on September 30, 1988.

The court derives its recitation of the relevant background facts and procedural history from undisputed facts and from the factual findings of the bankruptcy court that are not clearly erroneous.[1] Appellee Internal Revenue Service ("IRS")[2] filed an administrative expense claim against Placid for postpetition taxes. Placid requested pursuant to 11 U.S.C. § 505(b) that the IRS conduct an expedited examination of its tax liability for the 1986 and 1987 tax years. Placid and the IRS resolved all but two of the issues raised by the examination. The unresolved questions concerned the deductibility of certain professional fees and the alleged loss of oil and gas licenses by Placid's British subsidiary (Placid Oil Company–United Kingdom) in the North Sea. The IRS and Placid litigated the two unresolved issues in the bankruptcy court.[3]

Appellant Wright's law firm—Shank, Irwin, Conant, Lipshy & Casterline ("Shank, Irwin")—had represented Placid for many years prior to Placid's chapter 11 filing. Initially as a Shank, Irwin associate, and later as a partner, Wright represented Placid on transactional and tax matters. Wright was a partner of the firm when it dissolved in 1990.

The law firm of Simon, Anisman, Doby, Wilson & Skillern ("Simon, Anisman") served as Placid's counsel in the chapter 11 proceeding, taking the place of a firm that had represented Placid initially. The bankruptcy court approved Simon, Anisman's employment. The firm of Vinson & Elkins served with court approval as Placid's special tax counsel until 1988. Because of potential conflicts, Shank, Irwin did not act either as bankruptcy counsel or as special tax counsel to Placid. After Vinson & Elkins withdrew,[4] Simon, Anisman undertook Placid's representation concerning the IRS's postpetition tax liability claim.

On July 26, 1989 the IRS wrote a letter expressing its concern to Khent H. Row-

---

**1.** The court has treated as findings of fact certain of the holdings that the bankruptcy court has labeled conclusions of law. It is not always "possible to tell readily in every case whether a particular determination is one of fact or of law." 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2588 at 750 (1971) (referring to Fed.R.Civ.P. 52(a)). "[T]he label put on the determination by the trial court is not decisive." *Id.; see Benrose Fabrics Corp. v. Rosenstein,* 183 F.2d 355, 357 (7th Cir.1950) (true nature of findings of fact and conclusions of law is not determined by their label). Where this distinction is important, such as when this court has reviewed under the deferential clearly erroneous standard a bankruptcy court holding labeled as a "conclusion of law," the court indicates that the bankruptcy court's putative legal conclusion should be treated as a fact finding.

**2.** The appellee is the United States of America (the "government"). The pleadings in the bankruptcy court were filed by the government on behalf of the IRS. For clarity, the court refers to the appellee as the IRS.

**3.** *See In re Placid Oil Co.,* 140 B.R. 122 (Bankr. N.D.Tex.1990), 140 B.R. 129 (Bankr.N.D.Tex. 1990), *aff'd,* 148 B.R. 464 (N.D.Tex.1991) (Fish, J.), *rev'd,* 988 F.2d 554 (5th Cir.1993). The merits of the tax litigation do not control the resolution of the instant appeal.

**4.** Vinson & Elkins resumed this representation in late 1991, reentering the case as special tax counsel to handle an appeal of the district court's decision to the Fifth Circuit. *See supra* at n. 3.

ton, Esq. ("Rowton"), an attorney with Simon, Anisman, that appellant Wright would be providing legal advice to Placid. The IRS informed Rowton that if Wright planned to participate in the case, he needed court approval for employment. Rowton responded in an August 8, 1989 letter, acknowledging that Wright would be participating, but only as a fact witness, not as a professional. Rowton indicated there was no need for the bankruptcy court to approve Wright's employment.

Later, at a September 18, 1989 status conference concerning Placid's objection to the IRS claim, the IRS complained of Placid's apparently inconsistent statements about Wright's role. The IRS based its concern on interrogatory answers that indicated Placid intended to call Wright as an expert witness at trial. The IRS believed Wright's only expertise was as a tax lawyer and that participation in this capacity would require court approval. The bankruptcy court responded by directing William L. White, Esq. ("White"), another lawyer with the Simon, Anisman firm, to inform Rowton not to hire as a consultant, without a court order, any lawyers to whom Placid would pay attorney's fees. The bankruptcy judge instructed White that he did not want any consultant or professional witnesses that were not subject to his order. He also expressed concern over the participation of any attorneys from the Shank, Irwin law firm without an application and court order because, *inter alia*, of the firm's representation of Placid prior to bankruptcy. Rowton later acknowledged at an October 25, 1989 status conference that he had received and understood the instructions given to White for conveyance to him.

In a March 1990 deposition and at the April 1990 trial of the North Sea tax issue, the IRS examined Wright concerning his role in the litigation. Wright stated at the deposition that he was receiving compensation for his services. At trial he testified that his role was that of a fact witness, yet cross-examination reflected at least 38 occasions prior to trial where he had been contacted by the Simon, Anisman firm.

These contacts resulted in Simon, Anisman's charging fees to Placid in the amount of $22,357.50. Wright admitted he had redrafted pleadings that were filed by Simon, Anisman and had conferred with Rowton concerning the IRS's brief. Wright testified that he was called as a fact witness at trial because of his extensive knowledge concerning the North Sea matter. He admitted, however, that he had given Placid advice concerning the other tax issue, which related to deductibility of professional fees. An internal memorandum revealed that Wright had participated on a regular basis in the development of Placid's legal strategy.

Simon, Anisman's fee applications for April and May 1990 revealed an additional 21 contacts with Wright. Some of these occurred after the April 1990 trial and concerned legal concepts. Rowton billed for a conference with Placid executives and Wright, which he described as a "discussion of the IRS matter and strategy."

The IRS submitted an objection to Simon, Anisman's fee application for May 1990. On June 26, 1990 the IRS filed a "motion to determine the role of William D. Wright." At a July 11, 1990 hearing on the motion and objection, the bankruptcy judge warned that he would order that the fees paid to Wright be disgorged if he found that Wright had acted as an attorney in the case and was paid attorney's fees. The court directed that Wright determine how much money he had received since January 1989 and inform the court by letter.

In August 1990 Wright joined the Simon, Anisman firm. Simon, Anisman included in its billings charges for Wright's work with regard to litigation of the postpetition tax claim. The IRS filed an objection to Simon, Anisman's fee application for September 1990 because of charges for Wright's work as an attorney. On December 31, 1990 Wright and Rowton left Simon, Anisman to establish their own law firm. The bankruptcy judge considered the IRS's objection at a February 5, 1991 hearing. The judge stated he would order Wright to disgorge all his attorney's fees since the day Placid decided to use him as a witness, and would

disqualify Wright from taking part in the appeal to the district court of the decision on the North Sea tax claim, and being counsel of record.

Neither Wright nor Rowton was present at the hearing, although Ronald Payne, Esq. ("Payne"), an attorney with their firm, did attend and informed Wright and Rowton what had transpired. Wright nevertheless prepared the appellate brief, which was submitted under the name and signature of Simon, Anisman. The law firm of Wright and Rowton was shown on the brief as being "of counsel." The IRS objected to the February and March 1991 fee applications of Simon, Anisman, contending they contained charges for Wright's legal services. At a June 17, 1991 hearing, a Simon, Anisman attorney acknowledged that Wright had written the appellate brief. Neither Wright nor Rowton appeared for the hearing, although each had been given notice. The bankruptcy judge stated that he was going to direct Wright to show cause why he should not account for all charges, collections, and fees he had received from Placid pertaining to any IRS claims in the Placid case since the date of confirmation and why he should not disgorge all such payments and property. The court also stated that Wright would be ordered to show cause why he should not be enjoined from practicing before the bankruptcy court.

The bankruptcy court convened the show cause hearing on August 15, 1991. At the conclusion of the hearing, the court ordered Wright to account for the money he had personally received from Placid after the petition in bankruptcy was filed. Wright responded he would provide the accounting, but never did, resulting in the IRS's filing a formal motion on February 13, 1992 to require an accounting.

The bankruptcy court heard the motion on August 14, 1992. Wright appeared through counsel. The court found that Wright had acted as tax counsel at a time when Placid's attorneys were insisting he was merely a fact witness, and had billed Placid for his services as a Shank, Irwin partner for postpetition, preconfirmation legal work that had not been authorized by the bankruptcy court.

At the conclusion of the August 14, 1992 hearing, the bankruptcy court set another show cause hearing for October 14, 1992. Wright moved to continue the hearing indefinitely on the ground that he had accepted employment outside the country. Alternatively, he requested that the bankruptcy court consider his affidavit in lieu of live testimony. By agreement between the IRS and Wright's counsel, the bankruptcy court ordered that Wright's affidavit be used.

After considering the relevant pleadings, the bankruptcy court entered the December 1, 1992 order of disgorgement and disbarment now on appeal. In supportive findings and conclusions, the court found that the IRS's counsel had explicitly advised Wright of the need to apply for court approval to perform postconfirmation work for Placid, that Wright knew he needed to obtain court approval for the work he performed in connection with Placid's 1986 and 1987 income tax disputes, and that Wright was paid for legal services without necessary court approval. The court determined that Wright had written Placid's appellate brief even after Payne—the Wright & Rowton attorney who attended the February 5, 1991 hearing—had apprised Wright that he had been disqualified from doing so. The judge also found that the elaborate arrangements pursuant to which Wright wrote the appellate brief that was "signed and passed off as a brief written by Simon, Anisman must surely have aroused Mr. Wright's suspicion about the propriety of his actions." The court held that Wright had rendered unauthorized postpetition legal services in the amount of $132,223.93. It ordered Wright to disgorge this sum and permanently barred him from practicing in the bankruptcy court because he had deceived the bankruptcy court and violated its orders.

## II

Wright appeals the bankruptcy court's order on the basis of 14 issues that he groups as components of seven arguments. Before turning to them, the court address-

es a recurrent—but mistaken—theme that runs through Wright's briefing.

■ Several of Wright's contentions assume the bankruptcy court's order is to be treated as a criminal contempt sanction.[5] On this basis, Wright posits that the bankruptcy court had no jurisdiction to exact such punishment and that he did not violate an express, specific, and definite order, as is required before a contempt sanction can be imposed.

The court rejects all of Wright's analysis that assumes the order should be treated as a contempt sanction. This court had occasion to discuss the jurisprudence of civil and criminal contempt in the context of a bankruptcy proceeding in *Yaquinto v. Greer*, 81 B.R. 870 (N.D.Tex.1988). "Sentences for criminal contempt are punitive in their nature and are imposed primarily for the purpose of vindicating the authority of the court. In contrast, sanctions for civil contempt are meant to be 'wholly remedial' and serve to benefit the party who has suffered injury or loss at the hands of the contemnor." *Id.* at 879 (citations omitted). "A judgment of civil contempt is conditional, and may be lifted if the contemnor purges himself of the contempt, while punishment for criminal contempt is unconditional." *Id.* at 879–80 (citing cases). This court held the bankruptcy court sanctions imposed in *Yaquinto* should be deemed criminal contempt orders because the fines were not imposed conditionally, did not serve to benefit the party who had suffered injury, there was no apparent relationship between the amount of the sanctions and the injured party's loss, and the bankruptcy

court's manifest intention was to punish. *Id.* at 880.

The present bankruptcy court order, however, is neither one of civil nor criminal contempt. The court issued the December 1, 1992 order in response to the government's objection to payments that it contended Placid had made to Wright for legal services relevant to Placid's postpetition, preconfirmation income tax liabilities. *See* Order at 1. The court directed Wright to pay the sum of $132,223.93 to the court registry, and ordered Wright to "be permanently stricken from the list of attorneys admitted to practice law before the Bankruptcy Court for the Northern District of Texas." The court made no reference to holding Wright in contempt of court.

The order is supported by findings of fact and conclusions of law. No express mention is made of a contempt finding. Instead, the findings and conclusions make clear that the bankruptcy court ordered Wright to disgorge the fees pursuant to the authority conferred upon it by 11 U.S.C. §§ 327(a) and 329 to regulate the retention and compensation of attorneys who provided legal services to Placid. *See* Concl.Law Nos. 1, 2, 6. It ordered Wright disbarred on the basis of its inherent authority to do so, and pursuant to N.D.Tex.R. 13.2,[6] which applies to the Bankruptcy Court through N.D.Tex. Bankr.R. 9034. *See* Concl.Law No. 8 (reprinted *infra* at n. 9).

Were this court persuaded that the bankruptcy court had in substance held Wright in contempt, it would not permit the bankruptcy court's characterization of its actions to govern appellate review. *Cf. Ya-*

---

**5.** *See, e.g.,* Appellant Br. at 4 (stating as Issue No. 13 whether bankruptcy court "has no jurisdiction to enter an order of contempt"); 28 (referring to requirements before court can sanction alleged "contemnor"); 32 (citing case that holds person cannot be held in contempt of an order if he does not have knowledge of the order); 33 (citing case that holds contemnor cannot be punished for violating vague and indefinite order); 37 (arguing order "constitutes an order of criminal contempt, which the Court was wholly without jurisdiction to impose"); 39 (contending order "can only be viewed as punitive, and therefore, constitutes an order of crim-

inal contempt"); 45 & n. 5 (arguing bankruptcy court did not comply with Fed.R.Bankr.P. 9020(b) concerning requirements of hearing and notice before contempt sanction can be imposed); Rep.Br. at 20 (contending order constituted order of contempt).

**6.** This Rule was amended on February 8, 1993, after this appeal was filed. The amendment does not alter this result. The substance of former Rule 13.2 that the bankruptcy court cites in Concl.Law No. 8 n. 5 is now contained in N.D.Tex.R. 13.2(b).

*quinto,* 81 B.R. at 880 (holding bankruptcy court's sanction orders should be treated as criminal contempt orders). The present record makes pellucid, however, that the bankruptcy court acted on the basis of the authorities it cited.

■ Where the bankruptcy court has jurisdiction over a proceeding, court approval is necessary before an attorney may be employed. *See* 11 U.S.C. § 327(a) ("the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate"). Section 327(a) is made applicable to debtors and debtors-in-possession. *In re Land,* 943 F.2d 1265, 1266 (10th Cir.1991) (citing *Fanelli v. Hensley,* 697 F.2d 1280, 1283–84 (5th Cir.1983)). In order to comply with § 327(a), the debtor-in-possession must satisfy the requirements of Fed. R.Bankr.P. 2014(a), which provides for the filing of an application with the court for approval of the employment of an attorney. *Id.* Absent compliance with the Bankruptcy Code and Rules, an attorney has no absolute right to an award of compensation. *In re Anderson,* 936 F.2d 199, 204 (5th Cir.1991) (per curiam). This is particularly true when the attorney fails to seek prior approval of employment. *Id.* Section 329 applies to services rendered in connection with a bankruptcy proceeding. *In re Hargis,* 895 F.2d 1025, 1026 (5th Cir.1990) (on rehearing). It permits the bankruptcy court to regulate the extent of attorney compensation. Where the fees have been paid to an unapproved attorney, the return of the compensation is an appropriate remedy. *Land,* 943 F.2d at 1267; *see In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569, 575 (Bankr.N.D.Tex.1986) (failure of counsel to obey mandate of Bankruptcy Code and Rules is basis for requiring the return of sums paid). The bankruptcy court acted pursuant to its authority to approve employment of attorneys and regulate their fees when it ordered disgorgement.

■ Nor did the bankruptcy court effectively hold Wright in contempt when it disbarred him. Although there are cases that analyze the bankruptcy court's author-

ity to discipline lawyers in the context of that court's contempt power, *see, e.g., In re Assaf,* 119 B.R. 465, 467 (E.D.Pa.1990) (bankruptcy court had power to enter suspension order pursuant to civil contempt authority), others recognize the bankruptcy court's inherent and statutory power and authority to disbar attorneys not for the purpose of punishment, but to protect the courts and the public from persons unfit to practice, *see, e.g., In re Derryberry,* 72 B.R. 874, 881 (Bankr.N.D.Ohio 1987). The bankruptcy court expressly invoked its inherent authority and the provisions of this court's Local Rule 13.2, made applicable to the bankruptcy court by that court's Local Rule 9034, when it ordered Wright disbarred.

The Fifth Circuit implicitly recognized in *In re Johnson,* 921 F.2d 585 (5th Cir.1991), that bankruptcy judges may discipline lawyers both in the context of contempt and of disciplinary proceedings. In *Johnson* the bankruptcy judge entered what he denominated as a contempt order. The order included a one year suspension from practice in the bankruptcy court. *Id.* at 586. The question before the Fifth Circuit was whether the bankruptcy judge should have recused himself from presiding in the matter. *Id.* at 587. Before deciding that issue, the panel addressed the nature of the bankruptcy court proceeding, noting the bankruptcy judge had characterized it both as a contempt and disciplinary matter. *Id.* at 586. The panel then appeared to emphasize the disciplinary nature of the proceeding, recounting statutory and case authority supporting the bankruptcy court's "authority to deny attorneys and others the privilege of practicing before that bar," as well as the court's Local Rule, *see id.* at 586–87, and noting that "a bankruptcy court does have the power to conduct a disciplinary hearing and discipline the attorneys who practice before it." *Id.* at 587. Because the panel held the recusal statute applied equally in a disciplinary context, it vacated the order on appeal, finding the judge had abused his discretion by failing to recuse himself. *Id.* at 587–88.

Because the bankruptcy court had the power under the Local Rules and possessed inherent authority to enter a disbarment order, and in the absence of any indication that the court below intended to impose a contempt sanction, the court holds the bankruptcy court's action may not be treated as a contempt order. To the extent Wright seeks reversal on the basis of contempt of court jurisprudence, his arguments are rejected.[7]

## III

The court now turns to Wright's contentions that do not hinge on the mistaken characterization of the order as one for contempt of court. The court considers together Wright's arguments for reversal based upon assertions that he did not violate an order of, and made no misrepresentations to, the bankruptcy court.[8]

## A

The court rejects these arguments as a basis for setting aside the bankruptcy court's disgorgement directive. The bankruptcy court ordered the return of fees based upon the determination that it had never approved Wright's employment as Placid's attorney but that Wright had received attorney's fees for services that required court approval. *See* Find.Fact Nos. 18–22, 29, 32, 34, 36–37, 39–42, 45–52; Concl.Law Nos. 1–3, 6–7. The bankruptcy court did not clearly err in so holding.

■ This court reviews the factual findings of the bankruptcy court and the inferences to be drawn therefrom under the clearly erroneous standard. Fed. R.Bankr.P. 8013; *In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 798 (N.D.Tex.

1986). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re Block Shim Dev. Co.–Irving*, 118 B.R. 450, 453 (N.D.Tex. 1990), *aff'd*, 939 F.2d 289 (5th Cir.1991). "If the trier of fact's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it." *Id.* "[T]his court does not find facts. Neither is it free to view the evidence differently as a matter of choice." *Id.* at 456. The bankruptcy judge's "unique perspective to evaluate the witnesses and to consider the entire context of the evidence must be respected." *Endrex Exploration Co. v. Pampell*, 97 B.R. 316, 323 (N.D.Tex.1989). "The question is whether the bankruptcy court's assessment of the evidence was clear error." *In re Block Shim*, 118 B.R. at 456.

■ Beginning in July 1989 and culminating with the bankruptcy court's order of December 1, 1992, the IRS, Wright, and others vigorously disputed the role that Wright played in the Placid tax litigation. The bankruptcy court considered numerous written submissions, conducted several hearings, and listened to considerable oral argument—all directed to this very issue— before reaching a decision. It determined that Wright had in fact rendered legal services to Placid that required court approval, and was not merely a fact witness or an attorney providing postconfirmation legal services of a type that did not require bankruptcy court approval. The question before this appellate court is not whether it would have made the same findings as did the bankruptcy court. The issue is wheth-

---

**7.** Wright also contends the bankruptcy court lacked jurisdiction to hold him in criminal contempt. *See* Appellant Br. at 37–40. Because the bankruptcy court did not impose a contempt sanction of any type—civil or criminal—the court rejects this argument.

**8.** The bankruptcy court also held that Wright had violated an attorney's duty of candor toward the court, citing State Bar of Texas Disciplinary Rules of Professional Conduct Rule 3.03(a)(1), Tex.Gov't Code Ann. tit. 2, subtit. G App., Art. 10, § 9, Rule 3.03(a)(1) (West Supp.

1993). Wright challenges this conclusion on appeal, but demonstrates no basis to reverse the bankruptcy court. The bankruptcy court found that Wright had deceived the court. This finding, which this court holds today is not clearly erroneous, supports the determination that Wright violated Rule 3.03(a)(1)'s duty of candor. It is therefore immaterial that under the factual scenario that Wright proffers—and that the bankruptcy court necessarily found did not occur—Wright would not have committed an ethical infraction.

er the bankruptcy court's findings are clearly erroneous. The bankruptcy court had a basis in the record to find that Wright never obtained approval to represent Placid as an attorney but that he in fact acted in this capacity rather than merely as a witness or a consultant. This court has painstakingly reviewed the record. It is not, as it must be, left with the definite and firm conviction that a mistake has been committed.

## B

The court next examines Wright's contentions that he did not violate a bankruptcy court order, and made no misrepresentations to the bankruptcy court, as bases for reversing the bankruptcy court's decision to disbar him.

### 1

■ A federal court may disbar an attorney only upon presentation of clear and convincing evidence sufficient to support the finding of one or more violations warranting this extreme sanction. *In re Medrano*, 956 F.2d 101, 102 (5th Cir.1992). The bankruptcy court properly utilized the clear and convincing evidence standard on which to base its disbarment order. *See* Concl.Law No. 8.

■ Clear and convincing evidence, in this context, is "that weight of proof 'which produces in the minds of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *In re Medrano*, 956 F.2d at 102 (quoting *Cruzan by Cruzan v. Director, Missouri Dept. of Health*,

497 U.S. 261, 285 n. 11, 110 S.Ct. 2841, 2855 n. 11, 111 L.Ed.2d 224 (1990)). This court may not disturb the bankruptcy court's findings unless they are clearly erroneous. It makes this determination in the context of the clear and convincing evidence standard.

The bankruptcy court supported its order with 52 findings of fact and eight conclusions of law. In Concl.Law No. 8, the court held that Wright should be permanently disbarred based upon "the above-detailed clear and convincing evidence of Mr. Wright's deception of this Court and violation of its orders." Concl.Law No. 8.[9] Because the bankruptcy court based its ultimate legal conclusion upon the "above-detailed" evidence, this reviewing court must look elsewhere in the findings and conclusions to ascertain the factual basis for the court's decision. Although sometimes denominated as conclusions of law, *see supra* at note 1 (discussing bankruptcy court's labeling of findings and conclusions), the bankruptcy court's predicate findings concerning deception and violation of bankruptcy court orders appear to be as follows: (1) the bankruptcy court on July 11, 1990 directed Wright to provide the court with a letter stating how much money he had received from Placid since January 1989, but Wright made no attempt in his August 8, 1990 letter response to provide the required accounting, Find.Fact Nos. 25–27; (2) despite the bankruptcy court's instructions that Wright was disqualified from representing Placid in the district court appeal, *see* Find.Fact No. 47, Wright wrote the brief and sent it to Simon, Anisman to be signed under that firm's name, *see* Find.Fact Nos. 32, 34, 47;

---

9. Concl.Law No. 8 states:
 The Court has also concluded that, in view of the above-detailed clear and convincing evidence of Mr. Wright's deception of this Court and violation of its orders, Mr. Wright shall be permanently barred from practicing law in the Bankruptcy Court of the Northern District of Texas. *See* Local Bankruptcy Rule 9034 of the United States Bankruptcy Court for the Northern District of Texas; Local Rule 13.2 of the United States District Court for the North-

 ern District of Texas; *In re Snyder*, 472 U.S. 634, 643 [105 S.Ct. 2874, 2880, 86 L.Ed.2d 504] (1985) (courts have inherent authority to suspend or disbar lawyers; this authority derives from the lawyer's role as an officer of the court which granted admission); *In re Medrano*, 956 F.2d 101 (5th Cir.1992) (discussing "clear and convincing evidence" standard for applying local rules regarding courts' disbarment of attorneys for unethical conduct).
 (Footnotes omitted).

Concl.Law No. 5;[10] (3) the bankruptcy court ordered Wright on August 15, 1991 to file a sworn accounting of all money he had received from Placid since it filed for bankruptcy, but Wright never made the accounting, *see* Find.Fact Nos. 36, 38; (4) although Wright knew he needed court approval, he acted as counsel to Placid, not merely as a fact witness, and was paid by Placid for legal services, *see* Find.Fact Nos. 18–22, 29, 32, 34, 36–37, 39–42, 45–52; Concl.Law Nos. 3,[11] 6;[12] (5) Wright was chargeable with actual and constructive notice of the court's orders regarding employment and continued to perform legal services for Placid after receiving that notice, *see* Concl.Law No. 4;[13] (6) "Wright, in addition to Placid's other attorneys, engaged for many months in an attempt to deceive [the bankruptcy court] regarding Mr. Wright's characterization as a fact witness rather than as a paid professional," *see* Concl.Law No. 5; (7) Wright deceived the court "regarding his role in the tax disputes," *see* Concl.Law No. 6; and (8) Wright "flagrant[ly] disregard[ed] ... [the bankruptcy court's] orders disqualifying him from participation in the District Court appeal," *see id.*

Because the bankruptcy court based its disbarment order on undesignated "above-detailed" findings of deception *and* violation of its orders, and in view of the applicability of the clear and convincing evidence standard in the context of the extreme sanction of disbarment, this court must be able to uphold each of the predicate findings on which the bankruptcy court may have relied before it may affirm the lower court's order.

**10.** Concl.Law No. 5 contains this relevant finding of fact that the court reviews for clear error: "Thereafter, having received this Court's specific order to refrain from participating in the prosecution of any appeals, Mr. Wright wrote Placid's appellate brief to the District Court and allowed it to be submitted under the name of Simon, Anisman." *Id.*

**11.** Concl.Law No. 3 contains this relevant finding of fact that the court reviews for clear error: "[Wright] was involved in drafting pleadings, participating in strategy conferences with Placid's other attorneys, and explaining issues of tax law to them. For three years he billed Placid

2

In its first and third findings, the bankruptcy court determined that Wright had not attempted to provide the accounting required on July 11, 1990 and had not produced the accounting ordered on August 15, 1991. *See* Find.Fact Nos. 25–27, 36, 38. Wright appeals these findings, contending he attempted to comply with the July 11, 1990 directive and that Placid provided the accounting required by the August 15, 1991 order.

Under the clear and convincing evidence standard that applies in the disbarment context, the court is unable to affirm the bankruptcy court's finding that "[n]o attempt was made in Mr. Wright's letter to provide an accounting of the fees he had received from Placid." *See* Find.Fact No. 27. To understand why, it is important to examine the instructions the bankruptcy court gave to Wright and the context in which they were given.

After considering extensive argument at the July 11, 1990 hearing, the bankruptcy court instructed Wright to write down and categorize the legal services he had performed for Placid from January 1989 to the date of the hearing. *See* July 11, 1990 Tr. at 36. Wright responded that he would need time to comply because many of the pertinent records were at Shank, Irwin, he did not have them, and he did not know where they were. *Id.* To this the bankruptcy court responded, "Okay. Well, you find out. And then give me your information of how much money you've gotten

and was paid by Placid for legal services in connection with the tax disputes."

**12.** Concl.Law No. 6 contains this relevant finding of fact that the court reviews for clear error: "Despite this Court's admonitions, Mr. Wright failed to secure court appointment as a professional acting on behalf of a debtor, all the while continuing to provide legal services to Placid."

**13.** Concl.Law No. 4 contains this relevant finding of fact that the court reviews for clear error: "[Wright] continued to perform legal services for Placid after receiving that notice [of the court's orders regarding his employment]."

from Placid from January '89." *Id.* When Wright indicated he had been in private practice since April 1, 1990 and inquired whether the judge was addressing only payments to Shank, Irwin, the judge asked Wright if he could find out how much Shank, Irwin got from Placid. *Id.* at 36–37. To this Wright responded he could do his best. The court replied, in relevant part, "Do your best, that's all. Find out. And then we'll go from there." *Id.* at 37. Later he said, in relevant part, "Do the best kind of work you can ... and then we'll schedule some sort of conference to look at it and see what you need to do, if anything, if anything, I don't know." *Id.* at 38; *see id.* at 40 ("Okay. Do your best work and find out what you can.").

Within one month of the court's July 11, 1990 directive, Wright submitted an August 8, 1990 seven-page letter to the bankruptcy judge. Wright specifically addressed the bankruptcy court's fee directive, explaining that the relevant time records were in the possession of his former, now-dissolved firm, that the relevant computer database did not exist, that other records that could reflect the information were stored in thousands of boxes along with other material, and that the dissolved firm's remaining staff was then unable to assist Wright in obtaining the records due to other demands that Wright specified. Wright pledged to continue to search for the records himself, to transmit them to the court when found, and to produce his personal daily time diaries that reflected his activities on behalf of Placid. He also offered to produce his time and billings records for the period commencing April 1, 1990, at which time he commenced his solo practice.

While Wright did not in fact provide an accounting, the bankruptcy court clearly erred—in the context of the clear and convincing evidence standard—when it found that Wright had made no *attempt* to comply with the court's directive. The bankruptcy judge was clearly aware of difficulties Wright anticipated he would encounter when he sought to provide the accounting. The judge told Wright at least three times

that he was simply to do his best, indicating Wright's efforts would be followed by a conference or some additional proceeding to see what else, if anything, needed to be done. Two pertinent proceedings—the hearings on August 15, 1991 and August 14, 1992—did in fact take place. But Wright's failure to comply with the June 11, 1990 directive does not, as the bankruptcy court found, demonstrate the absence of even an *attempt* at compliance.

To the extent the court rested its disbarment order on a violation of this directive, the order cannot stand. Because the bankruptcy court's Concl.Law No. 8 leaves open the possibility of disbarment on this basis, the court vacates the portion of the December 1, 1992 order that disbars Wright. On remand the bankruptcy court shall reconsider whether the disbarment sanction is based upon a violation of the July 11, 1990 directive. If it is, the court shall redetermine the punishment to be imposed without reference to the directive.

The bankruptcy court did not clearly err in finding that Wright had failed to provide the accounting required by the court's August 15, 1991 oral order. *See* Find.Fact No. 38. The court ordered, and Wright agreed, to file under oath an accounting of all money Wright himself had received from Placid since the time Placid filed for bankruptcy. *See* Aug. 15, 1991 Tr. at 41. Wright contends on appeal that he complied with the order because he was directed to secure an accounting and Placid provided one. *See* Appellant Br. at 35. The court disagrees. The bankruptcy court ordered Wright himself to account for the money he received from Placid. *See* Aug. 15, 1991 Tr. at 41. After Wright failed to provide the accounting, the IRS filed a February 13, 1992 motion asking the bankruptcy court to enter an order requiring Wright to provide it. This motion followed an exchange of letters between the IRS and Wright's counsel, who advised IRS counsel that he did not believe Wright had any present responsibility to provide an accounting given his "obviously correct position [on the merits] and the absence of any Order memorializing any rulings

against him." [14] *See* Rec. 4436 at Ex. C. While it is true that Placid produced information in response to an IRS examination, and that the IRS then presented the evidence to the bankruptcy court, Wright did not comply with the court's order to provide an accounting.

### 3

The bankruptcy court's second and eighth findings concern Wright's writing the Placid appellate brief and submitting it under the Simon, Anisman firm name. The bankruptcy court found that despite its ruling at the February 5, 1991 hearing disqualifying Wright from the appeal of the case, Wright flagrantly disregarded the order by writing the brief and sending it to Simon, Anisman for review, signature, and filing under that firm's name. The brief was signed by White of the Simon, Anisman firm and Wright and Rowton were designated as "of counsel" to Placid. *See* Find.Fact Nos. 32, 34, 47; Concl.Law Nos. 5, 6.

Wright challenges the finding that he knew of and violated the February 5, 1991 order, contending (1) the bankruptcy court communicated this directive orally to Henry Simon, Esq. ("Simon"), who in turn told Wright he could participate in writing the brief and requested that Wright do so; (2) he was unaware of the directive until after the brief had been written and filed when, on July 17, 1991, the bankruptcy court issued a show cause order based on Wright's conduct; (3) the February 5, 1991 order abridged Wright's due process rights; and (4) the directive was not specific and definite because the bankruptcy court told Simon that Wright could be a witness and a consultant but provided no further guidance other than stating that Wright could not be of record and take part in the appeal.

At the February 5, 1991 hearing on the IRS's objection to Simon, Anisman's fee application, the bankruptcy court ruled that it was going to prevent Placid from employing Wright on the appeal and would compel Wright to disgorge all his attorney's fees since the day Placid decided to use Wright as a witness. *See* Feb. 5, 1991 Tr. at 15. The court advised Simon that Placid could pay Wright witness fees and consult with him, but that Wright was disqualified in the case on appeal. *See id.* The court determined that Wright could be a witness and a consultant but could not be of record and take part in the appeal. *See id.* at 15–16. Although Wright was not present at the hearing, the bankruptcy court found that Payne—an attorney with the Wright & Rowton firm—was present, that he discussed the hearing with Wright and Rowton, and that the elaborate arrangements under which Wright wrote the brief that was signed by the Simon, Anisman firm show that Wright was aware of the order that he not participate in the appeal. *See* Find.Fact Nos. 31, 47. The bankruptcy court did not clearly err in making these findings. The record supports the court's decision to reject Wright's contrary explanation.

The court also rejects Wright's due process challenge. For reasons the court discusses *infra* at § VI, the court holds the bankruptcy court did not abridge Wright's right to due process before entering the December 1, 1992 disbarment order.[15]

The court also finds lacking Wright's assertion that the February 5, 1991 directive was ambiguous. Wright argues the order permitted him to act as a witness and a consultant but provided no further guidance other than to state that he could not be of record and take part in the appeal. The court disagrees. The bankruptcy court's words were unmistakable:

> Now, they can pay them witness fees. And they can consult with him. But I'm going to disqualify him in this case on appeal. He's not going to—he can be a witness and a consultant, but he's not going to be of record and take part in it.

---

**14.** Wright does not contend on appeal that the absence of a written order requires reversal. *Cf.* Appellant Br. at 34–35.

**15.** To the extent Wright presents a discrete due process challenge to the February 5, 1991 order, the court considers it waived for the reasons explained *infra* at n. 18.

Feb. 15, 1991 Tr. at 15–16. Wright strains at the court's use of the term "of record," coupled with the permissibility of his acting as a consultant, as if this permits him otherwise to participate in the appeal so long as his name is not used. *See* Appellant Br. at 33; Rep.Br. at 9 & n. 5. This position is unjustified. The court's oral order plainly "disqualif[ies] [Wright] in this case on appeal" and states that Wright is "not going to be of record *and take part in it.*" (emphasis added). The bankruptcy court was neither ambiguous nor vague in its command that Wright could not participate as a lawyer in the district court appeal.

4

The fourth and fifth findings of the bankruptcy court reflect the holding that Wright provided legal services to Placid despite his knowledge that he needed court approval and knowledge of court orders regarding his employment as counsel. The bankruptcy court found that Wright rendered legal services to Placid regarding the tax issue in question, for which Placid paid him as an attorney, that Wright knew he needed to obtain court approval for this work, that Wright acted not merely as a fact witness, and that Wright continued providing legal services to Placid for many months after receiving notice of the court's orders prohibiting his employment. *See* Find.Fact Nos. 18–22, 29, 32, 34, 36–37, 39–42, 45–52; Concl.Law Nos. 3–4, 6. At various points in his brief, Wright challenges these findings, contending he did not violate the court's orders and did not render legal services to Placid.

Consistent with the court's determination above, *see supra* at § III(A), the court holds the bankruptcy court did not clearly err in finding that Wright acted as an attorney rather than as a fact witness or a consultant. To the extent the bankruptcy court found that Wright violated its February 5, 1991 order, it did not clearly err.

The bankruptcy court's findings apparently are not limited, however, to the February 5 order. The court held that although Wright had actual and constructive notice of its *"orders* regarding his employ-

ment[,] he continued to perform legal services for Placid after receiving that notice." Concl.Law No. 4 (emphasis added). One of the orders on which the bankruptcy court may have relied is the oral directive communicated to White at a September 18, 1989 status conference, pursuant to which White was to inform Rowton that he could not hire any lawyers as a consultant or professional witness. *See* Find.Fact No. 16. Wright challenges the finding that he violated the September 18, 1989 directive. He contends, in pertinent part, that the order was directed at Rowton and vested discretion in Rowton.

This court is unable to hold, under a clear and convincing evidence standard, that the bankruptcy court did not clearly err if it based its disbarment sanction on a violation of the directive. According to the record, the bankruptcy court instructed White to inform Rowton not to "hire any lawyers as a consultant that they're going to pay attorneys' fees without my order," *see* Sept. 18, 1989 Tr. at 18–19, and that it did not "want any consultant or professional witnesses that are not attorneys that are not subject to my order." *Id.* at 19. This order was not directed at Wright. Notwithstanding other prohibitions upon Wright's acting as counsel to Placid on the matters in question, the September 18, 1989 command could not have served as an independent basis to disbar him.

Because the bankruptcy court's Concl. Law No. 4 holding that Wright violated its orders may be based on the September 18, 1989 oral directive, the court vacates the order of disbarment. The bankruptcy judge shall reconsider whether he disbarred Wright on this basis, in whole or in part. If he did, he shall redetermine whether such punishment is warranted without reference to the order.

5

The bankruptcy court's sixth and seventh findings reflect the determination that Wright deceived the bankruptcy court regarding his role as a fact witness and in connection with the tax disputes. *See* Concl.Law Nos. 5, 6. Wright urges reversal of these findings, contending he could

not have deceived the bankruptcy court if in fact he never acted as counsel to Placid in the capacity alleged and that he never made any misrepresentations to the bankruptcy court. The court has carefully reviewed the entire record on appeal. It is not left with a definite and firm conviction that a mistake has been committed. The bankruptcy court did not clearly err in finding clear and convincing evidence that Wright had acted as counsel and that he had attempted to and had deceived the bankruptcy court.

## IV

Wright also posits that the court below lacked jurisdiction to order disgorgement. He contends the fees related to the tax case were incurred postpetition and were unrelated to the underlying bankruptcy proceeding. He therefore urges that the bankruptcy court lacked jurisdiction under § 329 to order disgorgement. Alternatively, he contends a January 8, 1987 order of the bankruptcy court authorized his services and that the bankruptcy court's finding that he was acting without court order, *see* Find.Fact No. 52, is clearly erroneous.

### A

■■■■ The court first considers the contention that the bankruptcy court did not have authority to order the disgorgement of fees because the fees were not related to the Placid bankruptcy. On the basis of the settled proposition that "related to" jurisdiction requires that a proceeding have some effect on the administration of the debtor's estate, Wright argues the tax litigation was not related because any liability would have been paid by Placid postconfirmation. According to Wright, it therefore follows that the tax litigation was not related to the Placid bankruptcy. The court disagrees.

**16.** Article XI, § 11.1 of the Placid plan of reorganization provides in part:
> *Section 11.1. Scope of Jurisdiction.* In addition to the retention of jurisdiction provided for elsewhere in this Plan ..., the Court shall retain jurisdiction to hear and, if applicable law provides, determine the following proceedings ...:
> (a) Any and all objections to the allowance or classification of Claims;

■■■■ As the court notes *supra* at § II, § 329 empowers the bankruptcy court to control attorney's fees incurred in a proceeding that is related to a bankruptcy case. The test for determining whether a proceeding is related to a bankruptcy is "whether the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re REPH Acquisition Co.*, 134 B.R. 194, 203 (N.D.Tex.1991) (emphasis in original). "[I]f the outcome of the proceeding could alter the debtor's rights, liabilities, options, or freedom of action, there is 'related to' jurisdiction." *Id.* (rejecting contention that eviction suit could not harm estate, and therefore proceeding was not "related to" bankruptcy case, because plan had been confirmed and estate had been concluded). An action is related to a bankruptcy case if it could impact the execution of the reorganization plan and actions in administering the estate. *Id.* (citing *In re Majestic Energy Corp.*, 835 F.2d 87, 91 (5th Cir.1988)). The record below reflects that the determination of Placid's potential tax liability for an administrative claim of over $12 million in postpetition taxes could conceivably have an effect on the Placid estate. The court therefore had jurisdiction to decide the question of disgorgement pursuant to § 329. Its determination whether the fees should be disgorged was a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

Additionally, the confirmed Placid reorganization plan retained jurisdiction over administrative claims litigation and approval of compensation for attorneys and other professionals.[16] This, too, conferred jurisdiction upon the bankruptcy court.

### B

Wright argues in the alternative that even if the bankruptcy court had jurisdic-

> (b) Any and all applications for payment of fees made by attorneys and other professionals pursuant to Sections 330 or 503 of the Code and any other fees and expenses authorized to be paid or reimbursed under the Code and any and all objections thereto, and the amount of any Administrative Expense Claims; ....

tion, this court should reverse because Wright was acting pursuant to a January 8, 1987 order that would have authorized his services. The court disagrees.

 The order to which Wright refers permitted Placid to employ attorneys "for the performance of tasks related to [Placid's] ordinary operation and course of business and not to handle matters in connection with the bankruptcy proceeding ... or related litigation." The order covered employment of various types of professionals (attorneys, accountants, engineers, appraisers, auctioneers, and other professionals) whose services could be required in the ordinary course of Placid's business and for which approval of limited fee payments would be approved prospectively, without formal fee applications, to avoid economic waste created by the approval process. The order did not apply to proceedings like the instant tax litigation.

### V

Wright next contends there is no evidence to support the amount of fees ordered disgorged by the bankruptcy court. He posits the court ordered him to disgorge sums paid not only to him individually but also to two now-dissolved law firms, without any analysis regarding whether the fees were properly paid to Wright as a witness or consultant rather than as an attorney. He argues there is no evidence regarding the amount of fees he personally received from the two law firms and that the bankruptcy court's findings that he received the amounts billed are not supported. He therefore urges that no record evidence exists to substantiate the actual amount of fees ordered disgorged.

 This court reviews the bankruptcy court's findings of facts under the clearly erroneous standard and its ultimate disgorgement determination for abuse of discretion. *See In re Anderson*, 936 F.2d at 203 (applying standard in context of fee

award to attorney for chapter 11 debtor). The bankruptcy court calculated the sum of $132,223.93 based upon four time-periods. *See* Find.Fact No. 50. For the 1987–88 period, the court found that Placid had paid Wright $1,485, *see* Find.Fact No. 41; for 1989 the sum of $37,534.11, *see* Find.Fact No. 42; for 1990 the sum of $63,004.82, *see* Find.Fact No. 48; and for 1991 the sum of $30,200, *see* Find.Fact No. 49. The court based these findings upon information that Placid provided the IRS and that the IRS in turn analyzed and presented to the bankruptcy court. Although Wright now argues in less than one page of his brief that there is no evidence to support the amount ordered disgorged, it appears from the record that Wright neither challenged this evidence below nor produced other fee information.[17] Moreover, the bankruptcy court expressly accounted for the fact that some of the fees in question were paid to Shank, Irwin. *See* Concl.Law No. 7. The court set out a rational explanation for the methodology it used. *Id.*

Wright's superficial challenge to the bankruptcy court's ruling does not demonstrate that the subsidiary findings of fact are clearly erroneous. From the court's review of the record, it cannot find that the bankruptcy court abused its discretion.

### VI

 Wright finally contends on appeal that he was denied due process of law. He argues that he was not provided adequate notice that the February 5 and June 17, 1991 hearings could result in punitive actions being taken against him, thus violating his right to due process.[18] This argument does not have merit.

Neither the February 5 nor the June 17 hearing resulted in the disgorgement and disbarment order that Wright now appeals. The December 1, 1992 order of the bankruptcy court imposed these sanctions. Prior to entering that order, the bankruptcy

---

**17.** Although Wright's failure fully to comply with the bankruptcy court's directive of July 11, 1990 cannot serve as an independent basis for disbarment, *see supra* at § III(B)(2), his failure to offer counter-evidence may be considered in affirming the amount of fees ordered disgorged.

**18.** The focus of Wright's due process contentions is somewhat blurred. Wright argues he was unaware that the February 5 and June 17, 1991 hearings could result in punitive actions being taken. This contention, considered alone, could be interpreted to challenge the results of those hearings, as opposed to the December 1,

court provided Wright with several notices and opportunities to be heard.

On July 17, 1991 the bankruptcy court signed an order to show cause that specifically ordered Wright to appear and show cause, *inter alia*, "why he should not disgorge all payments, property, of whatever kind received from Placid, directly or indirectly, or from Placid's attorneys or from any other source, with regard to any services rendered in the adjudication of the administrative tax claim, including appeals, and pay over such amounts to the Clerk of this Court pending further hearings." Order at 3. He was also ordered to show cause "why he should not be enjoined from practice in the Bankruptcy Court for the Northern District of Texas for a period of time to be determined by this Court." *Id.* at 4. The bankruptcy court convened a hearing on August 15, 1991, which Wright attended. Neither of the sanctions now appealed was imposed following that hearing.

Later, at an August 14, 1992 hearing on the IRS's February 13, 1992 motion for order requiring accounting—a hearing at which Wright was represented by counsel—the court indicated it would convene another show cause hearing on October 14, 1992. Wright thereafter moved to post-

pone the hearing indefinitely because he had accepted employment out of the country. Alternatively, the motion requested that the court "waive or modify the Order insofar as it requires him to appear in person on that date" and that the court accept an affidavit submitted with the motion, together with the prior hearing records, "as evidence and in lieu of his personal appearance." On September 14, 1992 the bankruptcy court ordered Wright to appear and show cause, *inter alia*, "why he should not be ordered to turn over funds he received [with respect to the litigation of the professional fees, the North Sea issues, or otherwise] to the Clerk of this Court." Order at 2. The order also directed that Wright show cause "[w]hether he should be enjoined from practicing before the United States District Court for the Northern District of Texas, with a recommendation from this Court to the District Court which shall hear such matter." *Id.* [19] By agreement of the parties, the court on September 23, 1992 signed an order canceling the show cause hearing, permitting Wright to be heard by affidavit, and directing the filing of proposed findings and conclusions and responses thereto.

The bankruptcy court order that was issued on December 1, 1992 followed receipt

1992 disgorgement and disbarment sanctions. The court is satisfied, however, that Wright's arguments are not directed to these two hearings as discrete actions to be reviewed, but are offered as predicates for asserting the December 1, 1992 order violated his due process rights.

To the extent Wright does contend the February 5 and June 17, 1991 hearings violated his rights, he failed to take a timely appeal from the bankruptcy court's July 17, 1991 order, which he has conceded in the bankruptcy court, *see* Rec. 4483 at 12, and in this court, *see* Appellant Br. at 21, contained the pertinent rulings entered by the bankruptcy court on February 5 and June 17. In other words, if Wright contends he was given inadequate advance notice that either the February 5 or June 17 hearing could result in adverse rulings, his remedy was to appeal the July 17, 1991 order on the basis of a due process violation. By failing to appeal, he has waived his due process challenge to those hearings except to the extent revived in the context of the sanctions imposed by the December 1, 1992 order.

**19.** Wright does not challenge on appeal the bankruptcy court's reference to an injunction against practicing in the *district court,* and the

court does not consider this issue. The bankruptcy court implicitly raised questions in the September 14, 1992 order about its authority to impose a disbarment sanction. It required in the order that Wright show cause in three relevant respects: first, "[w]hether he should be relegated to a hearing before the United States District Court upon proposed findings of fact by this Court for the regulation of attorneys;" second, "[w]hether this Court should proceed under Federal Rule of Bankruptcy Procedure 9020 or under general rules of equity as to the power of Courts to regulate counsel;" and third, which this court sets out in the text, "[w]hether he should be enjoined from practicing before the United States District Court for the Northern District of Texas, with a recommendation from this Court to the District Court which shall hear such matter." Order at 1–2. Aside from Wright's erroneous assertion that the bankruptcy court's December 1, 1992 order was a criminal contempt sanction that the court could not enter, neither party has challenged the bankruptcy court's authority to enter a disbarment order. The bankruptcy court obviously satisfied itself that it possessed the authority to impose such a sanction, and limited the scope of

of the parties' respective submissions. It was based on show cause orders that advised Wright of the sanctions being contemplated and of the reasons for imposing sanctions. Wright was afforded, but waived, the right to appear and testify personally. The bankruptcy court gave Wright ample opportunity to be heard prior to entering the order that imposed the sanctions that Wright now appeals. Wright received all the process he was due.

\* \* \*

The bankruptcy court's order is

AFFIRMED in part and VACATED and REMANDED in part.

the December 1, 1992 order to disbarment from the bar of the bankruptcy court. For the reasons set out *supra* at § II, the court holds the bankruptcy court had the authority, both inherent and by Local Rule, to discipline attorneys who practice before it.